Robert L. Weigel
Howard S. Hogan
Alison L. Wollin
Anne M. Coyle
Kimberly L. Friedman
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga S.A., Balenciaga America, Inc.,*
*Bottega Veneta S.A., Bottega Veneta Inc.,*
*Yves Saint Laurent America, Inc.,*
*Luxury Goods International (L.G.I.) S.A.,*
*and Kering S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| GUCCI AMERICA, INC.; BALENCIAGA S.A.; BALENCIAGA AMERICA, INC.; BOTTEGA VENETA S.A.; BOTTEGA VENETA INC.; YVES SAINT LAURENT AMERICA, INC.; LUXURY GOODS INTERNATIONAL (L.G.I.) S.A.; and KERING S.A., | : : : : : : : : | 2015 Civ. 03784 (PKC) |
| Plaintiffs, | : : : : | **FIRST AMENDED COMPLAINT** |
| -against- | : : | |
| ALIBABA GROUP HOLDING LTD.; ALIBABA.COM HONG KONG LTD.; ALIBABA.COM LTD.; ALIBABA.COM INVESTMENT HOLDING LTD.; ALIBABA.COM INVESTMENT LTD.; ALIBABA (CHINA) TECHNOLOGY CO., LTD.; ALIBABA.COM, INC.; TAOBAO HOLDING LTD.; TAOBAO CHINA HOLDING LTD.; TAOBAO (CHINA) SOFTWARE CO., LTD.; ALIPAY.COM CO., LTD.; BRAND BAG BOUTIQUE; YUN MI'S STORE; KOU KOU DAI (BUCKLE THE POCKET); EUROPE AND E NEWS; PICASSO TREND; LEHUI TEXTILE BEHALF; GUANGZHOU FEITENG JUNYE GIFTS MANUFACTURING CO., LTD.; SHENZHEN LIN JUN LEATHER CO., LTD.; YIWU WIRBEST E- | : : : : : : : : : : : : : : : : : : : | |

COMMERCIAL FIRM; LUXURY2000;                    :
BURBERRITTI FASHION PLAID BAG; AMY              :
LUXURY GOODS; SUNNY HOME STORE; YAO  :
MING AND TRACEY; AND JOHN DOES.                 :
                                                :
        Defendants.                                :
                                                :
                                                :
                                                :
                                                :
-----------------------------------------------------------------X

## TABLE OF CONTENTS

Page

NATURE OF THE ACTION ................................................................ 1

PARTIES ............................................................................................ 10

JURISDICTION AND VENUE ......................................................... 17

FACTUAL BACKGROUND .............................................................. 28

I.      Plaintiffs' Business and Marks ................................................. 28

II.     Counterfeiting and the Internet ................................................ 42

III.    Defendants' Business ................................................................ 43

IV.     The Sale of Counterfeit Products Through the Alibaba Marketplaces ............................ 51

        A.   Alibaba.com .................................................................. 53

        B.   Taobao.com ................................................................... 81

        C.   AliExpress.com ............................................................ 104

V.      The Alibaba Defendants' Unauthorized Sale of Plaintiffs' Marks as Keywords .......... 120

VI.     Alipay's Processing of Counterfeit Sales Through the Alibaba Marketplaces .............. 124

VII.    The Alibaba Defendants Are an Indispensable Part of the Enterprise to Sell the Counterfeit Products, Resulting in Consumer Confusion and Harm to Plaintiffs ......... 128

VIII.   The Alibaba Defendants' Unwillingness to Refrain from Trademark Infringement ...... 133

IX.     Consumer Confusion and Harm to Plaintiffs ................................................. 142

        A.   Plaintiffs' Marks As Keywords .................................... 142

        B.   Sales of Products Bearing Plaintiffs' Marks ................ 145

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS ............................ 147

SECOND CAUSE OF ACTION  AGAINST ALL DEFENDANTS ....................... 149

THIRD CAUSE OF ACTION  AGAINST THE ALIBABA DEFENDANTS ......... 150

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS ...................... 154

FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS .......................... 155

SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS .......................... 157

SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS .................... 182

EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS ...................... 185

NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS ......................... 185

TENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS ......................... 185

ELEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS .................. 186

Plaintiffs Gucci America, Inc. ("Gucci"), Balenciaga, S.A. and Balenciaga America, Inc. ("Balenciaga"), Bottega Veneta International S.A. and Bottega Veneta Inc. ("Bottega Veneta"), Yves Saint Laurent America, Inc. and Luxury Goods International (L.G.I.) S.A. ("YSL"), and Kering S.A. ("Kering") (collectively, "Plaintiffs"), by their attorneys, Gibson, Dunn & Crutcher, LLP ("Gibson Dunn"), for their complaint against Defendants Alibaba Group Holding Ltd. ("Alibaba Group"), Alibaba.com Hong Kong Ltd. ("Alibaba.com Hong Kong"), Alibaba.com Ltd. ("Alibaba Ltd."), Alibaba.com Investment Holding Ltd. ("Alibaba Investment Holding"), Alibaba.com Investment Ltd. ("Alibaba Investment"), Alibaba (China) Technology Co., Ltd. ("Alibaba Technology"), Alibaba.com, Inc., Taobao Holding Ltd. ("Taobao Holding"), Taobao China Holding Ltd. ("Taobao China Holding"), Taobao (China) Software Co., Ltd. ("Taobao Software"), and Alipay.com Co., Ltd. ("Alipay") (collectively, "Alibaba Defendants"), and Brand Bag Boutique; Yun Mi's Store; Kou Kou Dai (Buckle the Pocket); Europe and E News; Picasso Trend; Lehui Textile Behalf; Guangzhou Feiteng Junye Gifts Manufacturing Co., Ltd.; Shenzhen Lin Jun Leather Co., Ltd.; Yiwu Wirbest E-Commercial Firm; Luxury2000; Burberritti Fashion Plaid Bag; Amy Luxury Goods; Sunny Home Store; Yao Ming and Tracey; and John Does, allege as follows:

## NATURE OF THE ACTION

1.      Consumers instantly recognize the various trademarks used to identify the items merchandised or manufactured by or under licenses from Plaintiffs Gucci, Balenciaga, Bottega Veneta, and YSL (collectively, the "Plaintiffs' Marks").  For decades, these famous, arbitrary, and fanciful marks have received enormous exposure in the marketplace.  Over the years, millions of consumers have been exposed to the Plaintiffs' Marks through extensive advertising campaigns, in fashion magazines and other periodicals, as depicted on television and in motion pictures, and in other forms of unsolicited media coverage.  As a result, the Plaintiffs' Marks are

among the most widely-recognized trademarks in the United States, as well as among the most popular with consumers, which adds enormous value to the authentic products that bear the Plaintiffs' Marks ("Plaintiffs' Products").

2.    The Internet has opened the door for unauthorized merchants to reach a wide range of consumers in their efforts to sell counterfeit versions of the Plaintiffs' Products, which bear the Plaintiffs' Marks even though they are not manufactured, licensed, or approved by Plaintiffs ("Counterfeit Products").  To ensure that consumers make the association between the Counterfeit Products and the Plaintiffs' Products from which they were copied, the sellers of such products not only copy the designs, patterns, and color schemes associated with Plaintiffs' Products, but also expressly use Plaintiffs' Marks in their advertising and marketing and on the Counterfeit Products themselves.

3.    Hangzhou Yanbei Trading Co., Ltd.; Yiwu Bothwiner Fashion Accessory Co., Ltd.; Guangzhou Yongxing Leather Goods Mfg.; Dongguan Huawang Leather Co., Ltd.; Shen Zhen Aiers Watch Co., Ltd.; Shenzhen Meigeer Watch Co., Ltd.; Shenzhen Babylon Watch Co., Ltd.; VANCS Where Boutique; Spring Rain Leather Goods; Celebrity Shoe; Jinlong Luxury City; Gucci Fashion Shop; Ladylidy Shop; Coco Fashion Style;  Huiming Leather Mall; Hong Kong Longitude and Latitude International Trading; Fashion Zone Ltd.; Star Factory; Xiaohui Jin's Store (the "Initial Action Merchant Defendants"); and Brand Bag Boutique; Yun Mi's Store; Kou Kou Dai (Buckle the Pocket); Europe and E News; Picasso Trend; Lehui Textile Behalf; Guangzhou Feiteng Junye Gifts Manufacturing Co., Ltd.; Shenzhen Lin Jun Leather Co., Ltd.; Yiwu Wirbest E-Commercial Firm; Luxury2000; Amy Luxury Goods; Sunny Home Store; Yao Ming and Tracey; and John Does (the "Renewed Action Merchant Defendants," and together with the Initial Action Merchant Defendants, the "Merchant Defendants") without

authorization or license from Plaintiffs, have willfully and intentionally used, reproduced, and/or copied Plaintiffs' Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling, and/or offering to sell their Counterfeit Products.  The Merchant Defendants have shipped certain Counterfeit Products to New York.  Plaintiffs previously filed an action that included claims against both the Alibaba Defendants and other merchants of counterfeit goods under the caption *Gucci America Inc., et al. v. Alibaba Group Holding Ltd.*, No. 14 Civ. 5119 (S.D.N.Y.) (PKC), filed July 9, 2014 (the "Initial Action").  On or about July 10, 2014, the United States District Court for the Southern District of New York entered a temporary restraining order enjoining the Initial Action Merchant Defendants from engaging in trademark infringement and counterfeiting.[1]  On or about July 25, 2014, the Court entered a preliminary injunction that adopted the operative terms of that temporary restraining order.[2]  On or about July 24, 2014, the claims filed against the Alibaba Defendants in the Initial Action were dismissed without prejudice.  On May 15, 2015, Plaintiffs reasserted those claims against the Alibaba Defendants.[3]

4.     The Alibaba Defendants have created an online global marketplace on their websites Alibaba.com, AliExpress.com and Taobao.com (collectively, the "Alibaba Marketplaces") for the sale of wholesale and retail products originating from China.  The Alibaba Defendants facilitate and encourage the sale of an enormous number of Counterfeit Products through their self-described "ecosystem," which provides manufacturers, sellers, and

---

[1]   *See Gucci America Inc., et al. v. Alibaba Group Holding Ltd.*, No. 14 Civ. 5119 (S.D.N.Y.) (PKC), ECF No. 3 (Order dated July 10, 2014 entering a temporary restraining order, among other relief, against the Initial Merchant Defendants).

[2]   *See id.*, ECF No. 8 (Order dated July 25, 2014 entering preliminary injunction).

[3]   Plaintiffs voluntarily dismissed claims against Spring Rain Leather Goods and Xiaohui Jin's Store in the Initial Action and moved for a default judgment against the remaining Initial Action Merchant Defendants on July 17, 2015.

buyers of counterfeit goods with a marketplace for such goods, and provides online marketing, credit card processing, financing, and shipping services that effectuate the sale of the Counterfeit Products.

5. Plaintiffs set forth in great detail in the complaint in the Initial Action the numerous ways in which the Alibaba Defendants actively aided and facilitated the sale of Counterfeit Products through the Alibaba Marketplaces. In addition, after the filing of the Initial Action, Plaintiffs provided training materials concerning Plaintiffs' trademarks and detection of Counterfeit Products, and submitted thousands of notices of infringement to the Alibaba Defendants. Despite Plaintiffs' efforts, the Alibaba Defendants failed to delist repeat infringers of Plaintiffs' trademarks in a timely manner and continued to provide marketing and other services to merchants whom Plaintiffs had specifically notified the Alibaba Defendants were selling Counterfeit Products. Although the Alibaba Defendants took steps to appear to address counterfeiting concerns, many such steps were, in fact, designed to allow counterfeiters to continue sell Counterfeit Products. For example, the "three strike" rule as applied to merchants selling counterfeits is only enforced if each instance of infringement involves the same trademark. And the Alibaba Defendants refuse to acknowledge U.S. trademark registrations for takedown notices filed against merchants on Taobao.com, even though that site specifically targets U.S. consumers as described below. The Alibaba Defendants also continued to suggest search terms such as "replica," "famous brand bags," "imitation bags," and confusingly similar misspellings of Plaintiffs' trademarks that encourage consumers to seek out and purchase Counterfeit Products. On information and belief, the Alibaba Defendants have continued to sell Plaintiffs' trademarks as keywords.

6.     The Alibaba Defendants, a single business unit comprising the subsidiaries and related companies operating several wholesale and retail global online marketplaces and various ancillary services, knowingly make it possible for an army of counterfeiters to sell their illegal wares throughout the world, including the United States, and are compensated by the counterfeiters for enabling the illegal sale of Counterfeit Products.

7.     As set forth more fully in the body of the Complaint, the Alibaba Defendants knowingly encourage, assist, and profit from the sale of counterfeits on their online platforms. For example, the Hangzhou Yanbei Trading Company, is a "Gold Supplier" and "Assessed Supplier"—a status Hangzhou Yanbei Trading Company paid the Alibaba Defendants to attain and a designation that requires the merchant's factory to be inspected by the Alibaba Defendants or their agents.  Despite its "Gold Supplier" and "Assessed Supplier" status, this Merchant Defendant openly sold wholesale quantities of obviously fake Gucci products until it was enjoined by the Court.  Set forth below is an image of a counterfeit "Gucci" bag offered for sale by Hangzhou Yanbei Trading Company on the Alibaba Defendants' platform:



8.     The authentic Gucci bag retails for $795.  Hangzhou Yanbei Trading Company offered its counterfeit bag with Gucci's trademarks clearly visible for $2–$5 per unit, until this

Merchant Defendant was enjoined by the Court.  This seller required a minimum purchase of 2,000 units per order and offered to supply up to 50,000 units per month.

9.      When a customer typed in the word "replica" in the search bar on the Alibaba.com website, the Alibaba Defendants' algorithm added the term "wristwatches" and directed the customer to merchants selling counterfeits.  The Shenzhen Meigeer Watch Co., Ltd., a "Gold Supplier" and "Assessed Supplier" was  openly selling replica wristwatches with Gucci's registered trademarks, including the watch shown below with Gucci's registered trademark interlocking non-facing "GG" design and green-red-green stripe, until this Merchant Defendant was enjoined by the Court.



10.     Shenzhen Meigeer Watch Co., Ltd. sold its counterfeit watch for $10–$80 per piece until this Merchant Defendant was enjoined.  This seller required a minimum purchase of 300 pieces per order and offered to supply up to 200,000 pieces per month.  The authentic Gucci watch retails for $960.

11.     These are just two examples of the numerous specific Merchant Defendants identified in the Complaint.  The Alibaba Defendants provide the marketplace, advertising, and other essential services necessary for counterfeiters to sell their Counterfeit Products to customers in the United States.

12.     The Alibaba Defendants permit and encourage numerous counterfeiters to continue to operate on the Alibaba Defendants' various platforms—even when the Alibaba Defendants have been expressly and specifically informed that the merchants are selling counterfeits, and even when the merchants themselves state openly that they are selling counterfeits.  The Complaint specifically identifies a small fraction of the counterfeiters who have openly sold Counterfeit Products on the various marketplaces run by the Alibaba Defendants.  The Alibaba Defendants knew and should have known that these specifically identifiable Counterfeit Products could not be sold without their assistance, but instead of shutting down the counterfeiters, the Alibaba Defendants sought to profit from the counterfeiters' blatant violations of the Lanham Act.  The Alibaba Defendants continued these practices even after the filing of the Initial Action and notwithstanding Plaintiffs' enforcement efforts.

13.     The Alibaba Defendants have knowingly assisted these counterfeiters in virtually all aspects of their illegal operations.  As the Alibaba Group states in its May 6, 2014 Form F-1 Registration Statement ("Form F-1"), "sellers not only build their storefronts and product catalogues on our marketplaces; they also rely on our platform for a range of essential support services to operate their businesses."[4] Among other essential support services, the Alibaba Defendants provide "Web based and mobile interfaces to manage listings, orders and customer relationship as well as cloud computing services for their enterprise resource planning . . . and client relationship management . . . ."

---

[4]   Alibaba Group Holding Limited Form F-1 Registration Statement, filed with the U.S. Securities and Exchange Commission on May 6, 2014 ("F-1") at 138.

14.     The Alibaba Defendants assist the counterfeiters' business operations by providing marketing and logistical services for the counterfeiters' illegal enterprises.  The Alibaba Defendants cause the sales to take place by directing customers to the illegal counterfeits through their "proprietary algorithms."[5]  Alibaba Group states in its F-1 that "[o]ur data analytic and data management capabilities allow us to anticipate buyer needs and tailor product offering displays, matching buyers with the most relevant merchants."[6]  The Alibaba Defendants allow the counterfeiters to "extend their consumer reach through [the Alibaba Defendants'] ecosystem of marketing affiliates."[7]  The Alibaba Defendants help the counterfeiters attract customers by maintaining enormous databases containing "transactional and user behavior data generated on [their] marketplaces" that enable the Alibaba Defendants "to construct a powerful search engine that generates personalized results."[8]  The Alibaba Defendants use their "online marketing technology" to "continuously improve the effectiveness of our online marketing services for [Alibaba Groups'] sellers through the use of aggregated behavioral targeting data and analytics."[9]  The Alibaba Defendants thus use algorithms that respond to their online consumers' behavior using behavior based search technology in order to direct consumers to Counterfeit Products offered for sale within their marketplaces.

15.     The Alibaba Defendants sold keywords to counterfeiters, including Plaintiffs' world famous trademarks.  These keywords have actively assisted the Merchant Defendants to cultivate initial interest among customers in their Counterfeit Products, thus allowing the

---

[5]  F-1 at 169.

[6]  F-1 at 137.

[7]  *Id.*

[8]  F-1 at 169.

[9]  *Id.*

Merchant Defendants to impermissibly capitalize on the goodwill and reputation associated with Plaintiffs' trademarks.  The Alibaba Defendants also sold, as keywords, words that facilitate the sale of Counterfeit Products, such as "replica," "knockoff," and "imitation."   The keywords have actively assisted the Merchant Defendants to attract customers to buy Counterfeit Products bearing Plaintiffs' Marks.  The Alibaba Defendants have also added phrases such as "synthetic leather" to search terms and suggested terms such as "cucci" and "guchi" when "Gucci" is typed into the search bars on their various platforms to intentionally drive customers to merchants of Counterfeit Products.  The Alibaba Defendants profited from keyword sales every time a customer clicked on an advertiser's store.

16.     When a customer types one of Plaintiffs' names into the search bar on the Alibaba websites, the Alibaba Defendants recommend Merchant Defendants that are selling Counterfeit Products.  Nothing within the search results states that those merchants do *not* carry genuine Plaintiffs' Products.  Instead, the Alibaba Defendants explicitly direct customers looking for Plaintiffs' Products to the Merchant Defendants' listings for Counterfeit Products.  As a result, the Alibaba Defendants are themselves capitalizing on Plaintiffs' Marks and are actively assisting the Merchant Defendants in capitalizing on Plaintiffs' Marks in order to generate interest in the Merchant Defendants' Counterfeit Products.

17.     The Alibaba Defendants use "cloud-based deep learning" to enable sellers of counterfeits to know what keywords and other advertisements to buy in order to attract customers.  The Alibaba Defendants use their ability to analyze terabytes of data to enable the counterfeiters to "improve consumer targeting efficiency and enhance the return on investments for online marketers."[10]  In short, the Alibaba Defendants provide the marketplace, the search

---

[10]   *Id.*

9

engine, and the advertising that allows the counterfeiters to successfully attract customers to their Counterfeit Products bearing Plaintiffs' Marks and ultimately sell their Counterfeit Products bearing Plaintiffs' Marks, all in violation of the Lanham Act.

18.    The Alibaba Defendants have also processed payments for the sale of the Counterfeit Products, including nearly all of the Counterfeit Products described in this Complaint.  The Alibaba Defendants, specifically Alipay, accept customers' credit cards and process the sales through the various credit card systems.  Pursuant to the rules of MasterCard and Visa, the Alibaba Defendants are obliged to know the business of the merchants for which they process credit card sales.  The Alibaba Defendants also provide logistics services to the counterfeiters to enable them to ship their products.

19.    From the design of the online storefront through the selection and sale of keywords and other marketing to attract customers, to processing the credit card payments to conduct the sale, through to the shipment of goods, the Alibaba Defendants—collectively a self-described "ecosystem"—enable and encourage counterfeiters to advertise, market, offer to sell and sell their illegal products to customers in the United States in violation of the Lanham Act and the Racketeer Influenced and Corrupt Organizations Act.

20.    Together, the Alibaba Defendants and the Merchant Defendants formed an enterprise whose intentional and repeated sales of Counterfeit Products into the United States constitute a pattern of racketeering pursuant to 18 U.S.C. § 1962(c).  Defendants' pattern of racketeering has caused serious damage to Plaintiffs.

**PARTIES**

21.    Gucci is organized and exists under the laws of New York, with its principal place of business located at 685 Fifth Avenue, New York, New York 10022.  Gucci is the sole and exclusive distributor in the United States of items bearing the Gucci Marks (as defined herein) on

leather goods, clothing, jewelry, accessories, home products, and related items (collectively, "Gucci Products").

22.     Balenciaga S.A. is organized and exists under the laws of France, with its principal place of business at 15 Rue Cassette, Paris, France 75006.  Balenciaga America, Inc. is organized and exists under the laws of Delaware, with its principal place of business located at 50 Hartz Way, Secaucus, New Jersey 07094, and a New York office located at 542 West 22nd Street, New York, New York 10011.  Balenciaga S.A. and Balenciaga America, Inc. are referred to collectively herein as "Balenciaga."  Balenciaga and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the Balenciaga Marks (as defined herein) on leather goods, apparel, fragrances, jewelry, accessories, home products, and related items (collectively, the "Balenciaga Products").

23.     Bottega Veneta S.A. is organized and exits under the laws of Switzerland with its principal address at Via Industria 19, 6814 Cadempino, Switzerland.  Bottega Veneta Inc. is organized and exists under the laws of New York, with its principal place of business located at 50 Hartz Way, Secaucus, New Jersey 07094, and a New York office located at 699 Fifth Avenue, New York, New York 10022.  Bottega Veneta S.A. and Bottega Veneta Inc. are referred to herein collectively as "Bottega Veneta."  Bottega Veneta and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the Bottega Veneta Marks (as defined herein) on leather goods, apparel, jewelry, accessories, home products, and related items (collectively, the "Bottega Veneta Products").

24.     Yves Saint Laurent America, Inc. is organized and exists under the laws of New York, with its principal place of business located at 3 East 57th Street, New York, New York 10022.  The registered owner of the YSL Marks as defined herein is Luxury Goods International

(L.G.I) S.A. ("LGI"), which is organized and exists under the laws of Switzerland with its principal place of business at Via Industria 19, 6814 Cadempino, Switzerland.  YSL and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the YSL Marks (as defined herein) on leather goods, apparel, jewelry, accessories, home products, and related items (collectively, the "YSL Products").  LGI and YSL are referred to collectively as the "YSL Plaintiffs."

25.     Kering, S.A. is organized and exists under the laws of France, with its principal place of business located at 10 Avenue Hoche, Cedex 08, Paris, France 75381.

26.     Alibaba Group Holding Ltd. ("Alibaba Group") is organized and exists under the laws of the Cayman Islands, with its principal address at 969 West Wen Yi Road, Yu Hang District, Hangzhou 311121, People's Republic of China ("PRC").  Alibaba Group has a registered agent for service of process, Corporation Service Company, at the following address: 1180 Avenue of the Americas, Suite 210, New York, New York 10036.[11]

27.     Alibaba.com Ltd. ("Alibaba Ltd.") is organized and exists under the laws of the Cayman Islands, with its principal address at 699 Wang Shang Road, Binjiang District, Hangzhou 310052, PRC.[12]  Alibaba Ltd. is a wholly-owned subsidiary of Alibaba Group and the indirect holding company of the PRC subsidiaries relating to Alibaba Group's Alibaba.com, 1688.com, and AliExpress businesses.[13]

28.     Alibaba.com Hong Kong Ltd. ("Alibaba.com Hong Kong") is organized and exists under the laws of Hong Kong, with its principal place of business at 26/F Tower One,

---

[11]  F-1 at 9.

[12]  *Id*. at 72; *see also Company Overview of Alibaba.com Limited*, Bloomberg Business, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=428457 (last visited July 8, 2015).

[13]  F-1 at 72.

Times Square, 1 Matheson Street, Causeway Bay, Hong Kong.  Alibaba.com Hong Kong is

wholly owned by Alibaba Ltd.  Alibaba.com Hong Kong operates the websites

www.alibaba.com and www.aliexpress.com.

29.     Alibaba.com Investment Holding Ltd. ("Alibaba Investment Holding") is

organized and exists under the laws of the British Virgin Islands, with an address at Trident Trust

Co. (B.V.I.) Ltd., Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands

VG1110.  Alibaba Investment Holding is a direct, wholly-owned subsidiary of Alibaba Ltd. and

a lower-level holding company of the PRC subsidiaries relating to Alibaba Group's

Alibaba.com, 1688.com, and AliExpress businesses.[14]

30.     Alibaba.com Investment Ltd. ("Alibaba Investment") is organized and exists

under the laws of the British Virgin Islands, with an address at Trident Trust Co. (B.V.I.) Ltd.,

Trident Chambers, P.O. Box 146, Road Town, Tortola, British Virgin Islands VG1110.  Alibaba

Investment is the principal holding company for Alibaba's strategic investments.[15]

31.     Alibaba (China) Technology Co., Ltd. ("Alibaba Technology") is organized and

exists under the laws of, on information and belief, PRC, with an address at 699 Wang Shang

Road, Binjiang District, Hangzhou 310052, PRC.  Alibaba Technology is an entity primarily

engaged in the operations of Alibaba Group's wholesale marketplaces.[16]

32.     Alibaba.com, Inc. ("Alibaba Inc.") is organized and exists under the laws of

Delaware, with its principal address at 400 S. El Camino Real, Suite 400, San Mateo, CA 94402.

---

[14]   *Id.*

[15]   *Id.*

[16]   F-1 at F-37.

Alibaba Inc. is a subsidiary of Alibaba Ltd. and operates as a "B2B e-commerce company" and also focuses on technology maintenance, marketing and administrative services.[17]

33.     Taobao Holding Ltd. ("Taobao Holding") is organized and exists under the laws of the Cayman Islands, with an address at Trident Trust Co. (Cayman) Ltd., One Capital Place, P.O. Box 847, Grand Cayman KY1-1103, Cayman Islands.  Taobao Holding is a wholly-owned subsidiary of Alibaba Group and the indirect holding company of the PRC subsidiaries relating to the Taobao Marketplace and Tmall platforms.[18]

34.     Taobao China Holding Ltd. ("Taobao China Holding") is organized and exists under the laws of Hong Kong, with an address at 26/F Tower One, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong.  Taobao China Holding is the direct wholly-owned subsidiary of Taobao Holding.  Taobao China Holding is a direct holding company of the PRC subsidiaries relating to the Taobao Marketplace and Tmall platforms, and is the operating entity for the overseas business of Taobao Marketplace and Tmall.[19]

35.     Taobao (China) Software Co., Ltd. ("Taobao Software") is organized and exists under the laws of, on information and belief, PRC, with its registered address, on information and belief, at Jingfeng Village, Wuchang Subdistrict, Yuhang District, Hangzhou Zhejiang 310013, PRC.  Taobao Software is engaged in the operations of the Taobao Marketplace.[20]

36.     Alipay.com Co., Ltd. ("Alipay") is organized and exists under the laws of the PRC, with its registered address, on information and belief, at Unit 108E, 98 EShan Road

---

[17]   *Company Overview of Alibaba.Com, Inc.*, Bloomberg Business, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=38707079 (last visited July 8, 2015).

[18]   F-1 at 71.

[19]   *Id.*

[20]   *Id.*

91/Lane, Pudong New District, Shanghai 200127, PRC.   Alipay is a company related to the

Alibaba Group and has a long-term contractual relationship with the Alibaba Group through

which it provides payment processing services for the Alibaba Marketplaces.[21]

37.     Defendants Alibaba Group, Alibaba.com Hong Kong, Alibaba Ltd., Alibaba

Investment Holding, Alibaba Investment, Alibaba Technology, Alibaba Inc., Taobao Holding,

Taobao China Holding, Taobao Software, and Alipay are collectively referred to herein as the

"Alibaba Defendants."  The Alibaba Defendants are all part of a self-described "ecosystem."

38.     Brand Bag Boutique (previously operating as Emma Smith) is a merchant on

AliExpress.com, at http://www. aliexpress.com/store/424510, where it sells Counterfeit Products.

39.     Yun Mi's Store is a merchant on AliExpress.com, at http://www.aliexpress. com/

store/435690, where it sells Counterfeit Products.

40.     Luxury2000 (now operating as Ancient and Modern Famous Brand) is a merchant

on AliExpress.com, at http://www.aliexpress.com/store/1801854, where it sells Counterfeit

Products.

41.     Burberritti Fashion Plaid Bag is a merchant on AliExpress.com, at

http://www.aliexpress.com/store/all-wholesale-products/1499645.html, where it sells Counterfeit

Products.

42.     Sunny Home Store is a merchant on AliExpress.com, at http://www.aliexpress.

com/store/1081409, where it sells Counterfeit Products.

43.      Kou Kou Dai (Buckle the Pocket) (扣口袋) is a merchant on Taobao.com, at

http://shop60584641.taobao.com/search.htm?spm=a1z0b.7.w5002-10631289183.1.

hcRij2&search=y, where it sells Counterfeit Products.

---

[21]   F-1 at 10, 23.

44.      Amy Luxury Goods (艾米奢品) is a merchant on Taobao.com, at

http://shop114183880.taobao.com/?spm=2013.1.1000126.2.0SC9YS, where it sells counterfeit

Products.

45.      Europe and E News (欧美E讯) is a merchant on Taobao.com, at

http://shop63050331.taobao.com/index.htm?spm=a1z10.1-c.w5002-11442909774.2.8tcxFh,

where until recently it offered for sale Counterfeit Products.

46.      Picasso Trend (毕加索潮流) is a merchant on Taobao.com, at

http://shop118867821.taobao.com/?spm=2013.1.1000126.2.Ta5wVM, where it sells Counterfeit

Products.

47.      Lehui Textile Behalf (乐惠家纺代发) is a merchant on Taobao.com, at

http://shop113273170.taobao.com/?spm=2013.1.1000126.2.bcdB4L, where it sells Counterfeit

Products.

48.      Yao Ming and Tracey (姚麦国际皮具) is a merchant on Taobao.com, at

http://shop107931202.taobao.com/index.htm?spm=a1z10.1-c.w5002-11189249825.2.rqsGra,

where until recently it sold Counterfeit Products.

49.      Guangzhou Feiteng Junye Gifts Manufacturing Co., Ltd. is a merchant listed as a

"Gold Supplier" and an "Assessed Supplier" on Alibaba.com, at

http://www.alibaba.com/product-detail/custom-handbag-wallet-metal-badge-

logo_60168047169.html.  It offers for sale wholesale metal tags for use in manufacturing

Counterfeit Products bearing the Gucci Marks.

50.      Shenzhen Lin Jun Leather Co., Ltd. is a merchant listed as a "Gold Supplier" on

Alibaba.com, at http://brandbag.en.alibaba.com/, where until recently it sold wholesale

Counterfeit Products.

51.     Yiwu Wirbest E-Commercial Firm is a merchant listed as a "Gold Supplier" on Alibaba.com, at http://ywirbest.en.alibaba.com/, where it sells wholesale Counterfeit Products bearing the Gucci Marks.

## JURISDICTION AND VENUE

52.     This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. (the "Lanham Act"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), et seq. ("RICO"), and the laws of the State of New York.

53.     This Court has federal question jurisdiction over this action under 15 U.S.C. § 1121(a) (action arising under the Lanham Act), 28 U.S.C. §§ 1331 (federal question), 1338(a) (any Act of Congress relating to patents or trademarks), and 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark law).  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.

54.     Personal jurisdiction is proper over all Defendants in this district pursuant to N.Y.C.P.L.R. § 302(a)(1) and  § 302(a)(3), or, in the alternative, Rule 4(k) of the Federal Rules of Civil Procedure, by virtue of the following facts:

   a.    Defendants regularly conduct, transact, or solicit business within this District, engage in other persistent courses of conduct, and/or derive substantial revenue from goods and/or services used or consumed within this District; Defendants regularly and systematically direct electronic activity into the State of New York with the manifest intent of engaging in business within this District; Defendants conduct, transact, and solicit business in this District and derive substantial revenue from goods and/or services used or consumed within this District in

17

connection with the unlawful conduct complained of herein; and the unlawful

conduct engaged in by Defendants, complained of herein, caused and continues to

cause injury to Plaintiffs within this District.

b.  Defendants derive substantial revenue from cross-border e-commerce,

international and interstate commerce, including with the United States, in return

for the services they provide to legitimate and illegitimate Internet merchants:

  i.  The Alibaba Defendants generated $1 billion in revenue from international

  commerce in the year ended March 31, 2015.[22]

c.  Alibaba.com, an English-language wholesale marketplace for global trade owned

and operated by the Alibaba Defendants, hosts buyers and sellers from the United

States.  United States manufacturers and distributors sell their products on

Alibaba.com and the United States is one of the three biggest markets for buyers

on Alibaba.com.[23]

d.  AliExpress.com, a global consumer marketplace and English-language site owned

and operated by the Alibaba Defendants, sells products from wholesalers and

manufacturers in China to consumers in the United States.  In the three months

ended March 31, 2014, the United States was one of the three biggest markets for

buyers on AliExpress.com.[24]

e.  Goods purchased on Alibaba.com and AliExpress.com are regularly shipped into

the United States, including into the State of New York.

---

[22]  Alibaba Group Holding Limited Form 6-K, filed with the U.S. Securities and Exchange Commission on May 7, 2015 ("Form 6-K"), at 9.

[23]  F-1 at 154, 156.

[24]  F-1 at 154. .

f.  Goods purchased from Taobao.com, a Chinese-language website owned and operated by the Alibaba Defendants, are regularly shipped into the United States, including into the State of New York.

g.  Taobao Marketplace authorizes agents to make purchases on behalf of buyers from the United States and to ship goods into the United States, including into the State of New York.

h.  Taobao Marketplace advertises an "International Forwarding Service" to ship goods purchased from Taobao.com internationally.  Taobao Marketplace notes that certain goods are prohibited from international shipment, including "reactionary" or "obscene" materials, but notably does not state any prohibition against counterfeit goods.

i.  Alibaba.com and AliExpress.com target customers in the United States through online marketing and advertising—for example and without limitation, through pop-up advertisements targeted to Internet users in the United States, including users in the State of New York.

j.  Taobao.com displays pop up ads displaying an American flag and an image of the Statue of Liberty, along with a message in Chinese characters which, translated, reads "Dear, you can still shop on Taobao when you are located in the US." There is a link that reads "more information" in Chinese and navigates the browser to a page with more information about shipping and shopping tips, emphasizing how easy it is to shop from the U.S.

19



k.  On information and belief, millions of web users from the United States
(including the State of New York) visit Defendants' marketplaces every day.

    i.  Alibaba.com receives an estimated 8.1 million unique visitors daily and
over 39 million daily page views.[25] Approximately 5% of Alibaba.com's
visitors are from the United States.[26]  Alibaba.com is the 306th most
visited site in the United States, ranking above popular sites such as
Foxsports.com, Sprint.com, and Nike.com.[27]

    ii.  AliExpress.com receives an estimated 9.9 million unique visitors daily,
and over 98 million daily page views.[28]  Approximately 5.1% of
AliExpress.com's visitors are from the United States.  AliExpress.com is
the 151st most visited site in the United States, ranking above popular
sites such as Weather.gov and Tmz.com.[29]

---

[25]  *Alibaba.Com – Info*, Hypestat.com, http://alibaba.com.hypestat.com (last visited July 8, 2015).

[26]  *Id.*

[27]  *Alibaba.Com*, Alexa.com, http://www.alexa.com/siteinfo/alibaba.com  (last visited July 8, 2015); *Top Sites in the United States*, Alexa.com (last visited July 8, 2015); http://www.alexa.com/topsites/countries;11/US..

[28]  *Aliexpress.Com – Info*, Hypestat.com, http://aliexpress.com.hypestat.com (last visited July 8, 2015).

[29]  *Top Sites in the United States*, Alexa.com, http://www.alexa.com/siteinfo/aliexpress.com; http://www.alexa.com/topsites/countries;6/US (last visited July 8, 2015).

  iii. Taobao.com receives an estimated 31 million unique visitors daily, and an estimated 291 million daily page visitors.[30]  Approximately 1.3% of visitors on Taobao.com are from the United States.[31]  Taobao.com is the 181st most visited site in the United States, ranking, by comparison, above popular sites such as Nba.com, Thesaurus.com, and Ticketmaster.com, which rank 240th, 208th, and 199th, respectively.[32]

  iv. There are approximately 2.9 million Chinese speakers in the United States, including more than 500,000 Chinese speakers in New York, according to the latest census figures.

 l. Taobao.com's official mobile app is available for download in the United States.

 m. The Alibaba Defendants maintain places of business in the United States, including at least the following offices in the United States:

  i. Alibaba Group maintains data center and logistics facilities in the United States.[33]

  ii. Specifically, Alibaba, Inc. has an office in Santa Clara, California, with its address listed as 400 S. El Camino Real, Suite 400, San Mateo CA 94402.[34]

---

[30] *Taobao.com – Info*, Hypestat.com, http://taobao.com.hypestat.com (last visited July 8, 2015).

[31] *Id.*; *Taobao.com*, Alexa.com, http://www.alexa.com/siteinfo/taobao.com (last visited July 8, 2015).

[32] *Top Sites in the United States*, Alexa.com, http://www.alexa.com/siteinfo/aliexpress.com; http://www.alexa.com/topsites/countries;8/US (last visited July 8, 2015).

[33] *Our Offices*, AlibabaGroup.Com, http://www.alibabagroup.com/en/contact/offices (last visited July 8, 2015); *see also* Shira Ovide, *Alibaba Opens Data Center in Silicon Valley*, Wall St. J. (Mar. 4, 2015), *available at* http://www.wsj.com/articles/alibaba-opens-data-center-in-silicon-valley-1425485151.

[34] *Our Offices*, AlibabaGroup.Com, http://www.alibabagroup.com/en/contact/offices (last visited July 8, 2015).

iii.   Alibaba Inc. has a registered agent at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.[35]

iv.   Alipay has an office in Santa Clara, California, with its address listed as 3945 Freedom Circle, Suite 600, Santa Clara, California 95054.[36]

v.   In June 11, 2014, the Alibaba Defendants launched 11main.com, a United States invite-only consumer marketplace and English-language site.[37] United States specialty shops and boutiques sell their products on 11main.com to United States buyers.[38]  11main.com is headquartered in California, with its address listed as 360 East 6th Street, Chico, California, 95928.  In June 2015, the Alibaba Defendants announced that they are selling 11main.com to the New-York based company OpenSky—an online-marketplace operator—in exchange for a 37.5% stake in OpenSky.[39]

vi.   In March 2015, Alibaba, through its "cloud-computing subsidiary" Aliyun, opened its first U.S. data center, partnering with U.S.-based global data center Equinix.[40]  According to Alibaba, expansion into California's

---

[35]   State of Delaware, Division of Corporations, Entity Details, Alibaba.com, Inc., File No. 3182637, *available at* https://delecorp.delaware.gov/tin/GINameSearch.jsp.

[36]   *Contact*, Alipay.com, http://ab.alipay.com/i/lianxi.htm (last visited July 8, 2015).

[37]   11MAIN, https://11main.com/preview (last visited July 8, 2015).

[38]   Ryan Mac, *Alibaba Launches 11 Main To Grow U.S. Presence Before Its Record American IPO*, Forbes, June 11, 2014, *available at* http://www.forbes.com/sites/ryanmac/2014/06/11/alibaba-launches-11-main-to-grow-u-s-presence-before-its-record-american-ipo/.

[39]   Juro Osawa & Eva Doe, *Alibaba Stumbles in U.S. Online Market*, Wall St. J., June 23, 2015, *available at* http://www.wsj.com/articles/alibaba-sells-u-s-subsidiary-11-main-to-opensky-1435027883

[40]   *Aliyun Gets Cloud Services on the MAP with Global Partnership Program*, Alizila (Jun. 8, 2015) http://www.alizila.com/aliyun-gets-cloud-services-map-global-partnership-program?utm_source=twitterfeed&utm_medium=twitter.

Silicon Valley marked the company's entry into the U.S. market by "planting a flag in the U.S. and marking the company's first expansion overseas."[41]

    vii.  In March 2015, Alibaba began hiring employees for its U.S. headquarters in Seattle, Washington.[42]

  n.  Alibaba Group has made substantial investments in companies in the United States:

    i.  In March 2014, Alibaba Group purchased a 20% equity interest (on a fully-diluted basis) in TangoMe, Inc., "a leader in mobile messaging services based in the United States" for $200 million.[43]  In April 2014, Alibaba Group invested an additional $17 million in TangoMe, Inc. to maintain its 20% equity interest.[44]

    ii.  In March 2014 (and announced on April 2, 2014), Alibaba Group participated in a $250 million fund-raising round for Lyft, "one of the big players in the nascent-but-booming ride-sharing industry" and a main competitor of Uber.[45]

    iii.  In January 2014, Alibaba Group invested $15 million in 1stdibs, a "New York based luxury e-commerce site" that "links more than 1,500

---

[41]  *Alibaba Opens Its First U.S. Cloud Data Center*, Alizila (Mar. 4, 2015), http://www.alizila.com/alibaba-opens-its-first-us-cloud-data-center-0#sthash.OF5cAsr6.dpuf.

[42]  Paul Carsten & John Ruwitch, *Alibaba hiring in Amazon, Microsoft backyard as U.S. cloud unit expands*, Reuters (Mar 12, 2015), http://www.reuters.com/article/2015/03/12/us-alibaba-group-hiring-usa-idUSKBN0M810920150312.

[43]  F-1 at 91.

[44]  *Id.*

[45]  Michael J. de la Merced, *Lyft Raises $250 Million From Alibaba, Third Point and Others*, NYTimes.com (April 2, 2014), http://dealbook.nytimes.com/2014/04/02/lyft-raises-250-million-from-alibaba-third-point-and-others/.

international dealers of high-end antiques, vintage furniture and design, art, jewelry, fashion and homes to consumers."[46]

    iv.   In the nine months ended December 31, 2013, Alibaba Group acquired shares in ShopRunner, a U.S. company which "operates an online platform for buyers."[47]  Alibaba Group invested $202 million for a 39% equity interest in the company.[48]

    v.   In May 2015, Alibaba acquired a 9.3% stake—valued at more than $150 million[49]—in zulily inc., a U.S. online retailer and Delaware corporation.[50]

o.  On May 6, 2014, Alibaba Group filed its Form F-1 with the U.S. Securities and Exchange Commission for an Initial Public Offering ("IPO") of its shares in the United States to be listed on the New York Stock Exchange.  The Form F-1 states that Alibaba Group planned to raise $1 billion from the sale of its shares in the United States, although news reports estimated that the offering would raise $20–$26 billion and could prove to be the largest IPO in United States history.[51] *Forbes* magazine reported that the Initial Public Offering raised approximately

---

[46] *Alibaba invests $15m in 1stdibs*, 27 Asian Venture Capital J. 4, (Jan. 28, 2014), *available at* http://www.avcj.com/avcj/news/2325087/china-s-alibaba-group-makes-usd15-million-investment-in-1stdibs.

[47] F-1 at F-59.

[48] *Id.*

[49] *Alibaba Buys Stake in U.S. E-Commerce Site Zulily*, Wall St. J., May 10, 2015, *available at* http://www.wsj.com/articles/alibaba-buys-stake-in-u-s-e-commerce-site-zulily-1431169781.

[50] *See* Schedule 13G, filed with SEC on May 15, 2015 (reporting zulily, inc., the issuer, May 6, 2015 transaction with Alibaba).

[51] Kyle Anderson, *Why Alibaba IPO Value Estimates Keep Climbing – Up to $221 Billion*, MoneyMorning.com (July 1, 2014), http://moneymorning.com/2014/07/01/why-alibaba-ipo-value-estimates-keep-climbing-up-to-221-billion/.

$25 billion and described the IPO as the "Largest Global IPO Ever" and "the biggest in the world."[52]

p.  The Alibaba Defendants are all alter egos of each other:

  i.  The Alibaba Defendants operate as a single unit, sharing common ownership, the Alibaba Group, and a unity of interest, "to make it easy to do business anywhere."[53]  Indeed, according to Alibaba Group's Form F-1, Alibaba Group "operate[s] our Internet businesses and other businesses in which foreign investment is restricted or prohibited in the PRC through wholly-foreign owned enterprises, majority-owned entities and variable interest entities . . . These contractual arrangements collectively enable us to exercise effective control over, and realize substantially all of the economic risks and benefits arising from, the variable interest entities."[54] Alibaba Group defines the terms "we," "us," "our company," and "our" as including "Alibaba Group Holding Limited and its consolidated subsidiaries and its affiliated consolidated entities, including our variable interest entities and their subsidiaries."[55]  As set forth in Alibaba Group's Form F-1, the Alibaba Defendants constitute "one single operating and reportable segment, namely the provision of online and mobile commerce and related services" and Alibaba Group does "not allocate operating costs

---

[52]  Ryan Mac, *Alibaba Claims Title For Largest Global IPO Ever With Extra Share Sales*, Forbes, Sept. 22, 2014, http://www.forbes.com/sites/ryanmac/2014/09/22/alibaba-claims-title-for-largest-global-ipo-ever-with-extra-share-sales/.

[53]  F-1 at 1.

[54]  F-1 at 9.

[55]  F-1 at 11.

or assets to its business units."[56]   Accordingly, the Alibaba Defendants

operate as a single unit and each of the Alibaba Defendants is an agent of

the other Alibaba Defendants.

  ii.   The Alibaba Group controls the other Alibaba Defendants, *i.e.*, their

  marketing and operational policies.

  iii.   Certain Alibaba Defendants have maintained common office space and

  addresses, *i.e.*, Alibaba.com and Alipay shared an address at 3945

  Freedom Circle, Suite 600, Santa Clara, California 95054.

  iv.   On information and belief, the Alibaba Defendant subsidiaries are

  financially dependent on their parent, the Alibaba Group.

q.  Alibaba Group has caused its stock to be listed on the New York Stock Exchange

in an Initial Public Offering that raised approximately $25 billion.  On

information and belief, a significant reason that the Alibaba Defendants' IPO was

so successful was that the Alibaba Defendants offered investors the opportunity to

invest in the Alibaba Defendants' collective enterprise as a single unit, including

but not limited to the representations listed above.

r.  Alipay regularly processes transactions made through the Alibaba Marketplaces

that involve buyers located in the United States (including New York) and

communicates with those U.S. buyers and confirms their purchases via SMS text

message.  In addition, Alipay sends SMS text messages to buyers from various

U.S. cell phone numbers, including and without limitation numbers from New

---

[56]  F-1, Note 2(f) to Audited Financials at F-18.

York, Georgia, Illinois, Texas, California, North Carolina, Tennessee, and Louisiana.

s.   The Alibaba Defendants knowingly operate a marketplace for Counterfeit Products with the knowledge and intent that such Counterfeit Products (i) will ultimately be offered to consumers in New York and throughout the United States; (ii) infringe the rights of intellectual property owners in New York and throughout the United States, including but not limited to Plaintiffs; (iii) cause substantial consumer confusion among consumers in New York and throughout the United States; and (iv) cause the harm alleged herein that results from sales of Counterfeit Products in New York and throughout the United States, including but not limited to the harm caused to Plaintiffs who have their principal place of business or substantial operations in New York.

t.   On information and belief, the Alibaba Defendants are aware that even though many of the Counterfeit Products that are sold through the Alibaba Marketplaces are purchased by customers who may reside in China, the ultimate destination for a substantial number of those sales are re-sellers and consumers in the United States.  On information and belief, the Alibaba Defendants know that a substantial percentage of online merchants that offer Counterfeit Products to U.S. consumers supply and maintain their inventory of Counterfeit Products by purchasing them through the Alibaba Marketplaces.

u.   The Merchant Defendants have offered for sale, sold, and shipped Counterfeit Products to customers in New York and elsewhere in the United States.

v.   All Defendants are aware that Plaintiffs maintain principal places of business and/or substantial operations in New York and that the trademark infringements and counterfeiting alleged herein has caused and will cause injury to Plaintiffs in New York.

55.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL BACKGROUND

### I.   Plaintiffs' Business and Marks

56.   The Gucci, Balenciaga, Bottega Veneta, and YSL brands are enormously popular with the general public.  Plaintiffs' advertising, promotional, and marketing efforts have resulted in widespread and favorable public acceptance and recognition of their respective brands.  As a result, Plaintiffs' Marks have become famous and highly valuable, possessing strong secondary meaning among consumers and both commercial and conceptual strength.

## GUCCI

57.   Gucci is the owner of the right, title and interest in and to, *inter alia*, the following federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|------|-----------------|----------------------|
| GUCCI | 876,292<br>959,338<br>972,078<br>1,168,477<br>1,200,991<br>1,321,864<br>1,340,599<br>1,169,019<br>4,407,149<br>1,202,802 | 09/09/1969<br>05/22/1973<br>10/30/1973<br>09/08/1981<br>07/13/1982<br>02/26/1985<br>06/11/1985<br>09/15/1981<br>09/24/2013<br>07/27/1982 |
| GUCCI<br> | 3,061,918<br>4,555,556 | 02/28/2006<br>06/24/2014 |
| NON-INTERLOCKING GG MONOGRAM<br> | 1,106,722<br>1,107,311<br>3,378,755 | 11/21/1978<br>11/28/1978<br>02/05/2008 |
| GUCCI CREST<br> | 1,097,483<br>1,097,555<br>1,112,601<br>1,132,675<br>3,660,040 | 07/25/1978<br>07/25/1978<br>02/06/1979<br>04/08/1980<br>07/28/2009 |
| GREEN-RED-GREEN STRIPE<br> | 1,122,780<br>1,123,224<br>1,483,526<br>4,379,039 | 07/24/1979<br>07/31/1979<br>04/05/1988<br>08/06/2013 |

29

| | | |
|---|---|---|
| INTERLOCKING FACING GG DESIGN  | 1,158,170<br>1,464,522<br>3,376,129<br>3,391,739<br>4,454,342 | 06/23/1981<br>11/10/1987<br>01/29/2008<br>05/4/2008<br>12/24/2013 |
| INTERLOCKING NON-FACING GG DESIGN  | 3,039,629<br>3,039,630<br>3,039,631<br>4,407,197<br>3,470,140 | 01/10/2006<br>01/10/2006<br>01/10/2006<br>09/24/2013<br>07/22/2008 |
| SQUARE G  | 2,042,805<br>3,037,082<br>2,234,272 | 03/11/1997<br>01/3/2006<br>03/23/1999 |
| REPEATING GG DESIGN  | 2,680,237<br>3,072,549<br>3,072,547 | 01/28/2003<br>03/28/2006<br>03/28/2006 |
| REPEATING GG DESIGN  | 4,229,081<br>4,230,191<br>4,349,908<br>4,399,108<br>4,411,218 | 10/23/2012<br>10/23/2012<br>06/11/2013<br>09/10/2013<br>10/01/2013 |

| HALF HORSEBIT | 3,238,962 | 05/08/2007 |
|  | | |

58.     Annexed hereto as Exhibit 1 are true and correct copies of the United States Patent and Trademark Office ("PTO") registration certificates evidencing Gucci's ownership of these trademarks and printouts from the PTO's website setting forth the status of these trademarks.  Each mark was first used in commerce on or about the first date of use set forth in Exhibit 1.  All of the registrations set forth in Exhibit 1 are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of these registrations are incontestable.  Gucci also owns common law rights in the above and other marks for use in connection with the Gucci Products. These registered and common law trademarks are collectively referred to as the "Gucci Marks."

59.     The Gucci Marks are in full force and effect.  Gucci has never abandoned the Gucci Marks nor has Gucci ever abandoned the goodwill of its businesses in connection thereto. Gucci intends to continue to preserve and maintain its rights with respect to the Gucci Marks.

60.     Gucci was ranked 41st and 2nd Luxury Brand in Interbrand 2014 Best Global Brands.

61.     Gucci's website offers various types of products for sale to Internet users, including but not limited to bags, shoes, watches, wallets, belts, sunglasses, accessories, luggage, and hats.  As to its handbags, Gucci categorizes its handbags into at least seven different types: (1) clutches; (2) evening; (3) hobo bags; (4) shoulder bags; (5) top handles; (6) totes; and (7) cross body.  Each type of handbag has a different appearance, function, and purpose.  Shown

31