Robert L. Weigel
Howard S. Hogan
Alison L. Wollin
Anne M. Coyle
Kimberly L. Friedman
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga S.A., Balenciaga America, Inc.,*
*Bottega Veneta S.A., Bottega Veneta Inc.,*
*Yves Saint Laurent America, Inc.,*
*Luxury Goods International (L.G.I.) S.A.,*
*and Kering S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

GUCCI AMERICA, INC.; BALENCIAGA S.A.;        :
BALENCIAGA AMERICA, INC.; BOTTEGA            :
VENETA S.A.; BOTTEGA VENETA INC.; YVES       :        2015 Civ. 03784 (PKC)
SAINT LAURENT AMERICA, INC.; LUXURY          :
GOODS INTERNATIONAL (L.G.I.) S.A.; and       :
KERING S.A.,                                 :
                                             :
                  Plaintiffs,                :
                                             :
         -against-                           :
                                             :
ALIBABA GROUP HOLDING LTD.;                  :
ALIBABA.COM HONG KONG LTD.;                  :
ALIBABA.COM LTD.; ALIBABA.COM                :
INVESTMENT HOLDING LTD.; ALIBABA.COM         :
INVESTMENT LTD.; ALIBABA (CHINA)             :
TECHNOLOGY CO., LTD.; ALIBABA.COM, INC.;     :
TAOBAO HOLDING LTD.; TAOBAO CHINA            :
HOLDING LTD.; TAOBAO (CHINA) SOFTWARE        :
CO., LTD.; ALIPAY.COM CO., LTD; BRAND        :
BAG BOUTIQUE; YUN MI'S STORE; KOU KOU        :
DAI (BUCKLE THE POCKET); EUROPE AND E        :
NEWS; PICASSO TREND; LEHUI TEXTILE           :
BEHALF; GUANGZHOU FEITENG JUNYE GIFTS        :
MANUFACTURING CO., LTD.; SHENZHEN LIN        :
JUN LEATHER CO., LTD.; YIWU WIRBEST          :

E-COMMERCIAL FIRM; LUXURY2000;          :
BURBERRITTI FASHION PLAID BAG; AMY      :
LUXURY GOODS; SUNNY HOME STORE; YAO     :
MING AND TRACEY; AND JOHN DOES.         :
                                        :
            Defendants.                 :
-----------------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER, ASSET RESTRAINING ORDER, ORDER AUTHORIZING EXPEDITED DISCOVERY AND ALTERNATIVE SERVICE BY ELECTRONIC MAIL, AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION


New York, New York
July 21, 2015

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

I.    Plaintiffs' Brands and Trademarks ................................................................. 4

II.   The Investigation Into The Merchant Defendants' Infringing Storefronts ...................... 5

      A.    Merchant Defendants Sell Counterfeit Products through Alibaba.com ................. 6

      B.    Merchant Defendants Selling Counterfeit Products Through
            Taobao.com .......................................................................... 9

      C.    Merchant Defendants Selling Counterfeit Products through
            AliExpress.com ...................................................................... 10

ARGUMENT ................................................................................................. 12

III.  THE MERCHANT DEFENDANTS ARE SUBJECT TO PERSONAL
      JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE ............................ 12

      A.    The Merchant Defendants Are Subject to Personal Jurisdiction Under
            CPLR § 302(a) ...................................................................... 13

      B.    Exercising Personal Jurisdiction over the Merchant Defendants
            Comports with Due Process .......................................................... 15

IV.   PLAINTIFFS MEET THE STANDARD FOR A TEMPORARY
      RESTRAINING ORDER AND PRELIMINARY INJUNCTION ................................ 15

      A.    Plaintiffs Are Likely to Succeed on Their Lanham Act Claims .......................... 16

            1.    Plaintiffs Are Likely to Succeed on Their Trademark
                  Counterfeiting Claims .......................................................... 16

            2.    Plaintiffs Are Likely to Succeed on Their State Law Claims ................... 17

      B.    Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction ............. 17

            1.    The Merchant Defendants Will Continue to Damage Plaintiffs'
                  Goodwill and Reputation ...................................................... 18

            2.    The Merchant Defendants Will Continue to Interfere With
                  Plaintiffs' Right to Control the Quality of Goods Bearing
                  Plaintiffs' Marks ............................................................ 18

      C.    The Balance of Hardships Favors Plaintiffs ......................................... 19

**TABLE OF CONTENTS**
**(continued)**

Page

D.   An Order Enjoining the Merchant Defendants' Activities Will Also Serve the  Public Interest ....................................................................................... 19

V.   PLAINTIFFS ARE ENTITLED TO AN ORDER RESTRAINING THE MERCHANT DEFENDANTS' TRANSFER OF ASSETS............................................ 20

VI.   PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS ..................... 21

VII.   PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY ........................................................................................... 23

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*adMarketplace, Inc. v. Tee Support, Inc.*,
No. 13 Civ. 5635(LGS), 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013)................................. 25

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*,
No. 94 CIV. 5620 (JFK), 1994 WL 719696 (S.D.N.Y. Dec. 28, 1994) ................................. 24

*Ayyash v. Bank Al–Madina*,
233 F.R.D. 325 (S.D.N.Y.2005) ............................................................................................. 24

*Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*,
923 F. Supp. 433 (S.D.N.Y. 1996) ......................................................................................... 13

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d. Cir. 2007) .................................................................................................. 13

*Bulman v. 2BKCo, Inc.*,
882 F. Supp. 2d 551 (S.D.N.Y. 2012) .................................................................................... 15

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ....................................................................................... 13, 14, 15

*Citigroup Inc. v. City Holding Co.*,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................................... 13

*Digital Sin Inc. v. Does 1–27*,
No. 12 Civ. 3873(JMF), 2012 WL 2036035 (S.D.N.Y. June 6, 2012).................................. 25

*Digital Sin, Inc. v. Does 1-176*,
279 F.R.D. 239 (S.D.N.Y. 2012) ........................................................................................... 24

*F.T.C. v. PCCare247 Inc.*,
No. 12 Civ. 7189 (PAE), 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013) ................................... 22

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*,
651 F. Supp. 2d 72 (S.D.N.Y. 2009) ................................................................................ 18, 19

*GTFM, Inc. v. Solid Clothing Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002) .................................................................................... 17

*Gucci Am., Inc. v. Bank of China*,
768 F.3d 122 (2d Cir. 2014) ................................................................................................... 21

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
286 F. Supp. 2d 284 (S.D.N.Y. 2003) .................................................................................... 16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Gucci Am., Inc. v. Frontline Processing Corp.*,
  721 F. Supp. 2d 228 (S.D.N.Y. 2010) ................................................ 14

*Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*,
  219 F.3d 104 (2d Cir. 2000) ........................................................... 20

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
  138 F. Supp. 2d 449 (S.D.N.Y. 2000) ................................................ 13

*In re Int'l Telemedia Assocs., Inc.*,
  245 B.R. 713 (Bankr. N.D. Ga. 2000) ............................................... 22

*In re Vuitton Et Fils S.A.*,
  606 F.2d 1 (2d Cir. 1979) ............................................................. 17

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
  631 F. Supp. 735 (S.D.N.Y. 1985) .................................................... 16

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co. Ltd.*,
  No. 08 CV 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ................... 22

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
  312 F.3d 94 (2d Cir. 2002) ............................................................ 17

*Nat'l Football League, et al. v. Zhu, et al.*,
  13 Civ. 5416 (HB) (S.D.N.Y. Aug. 14, 2013) ..................................... 22

*Omega Importing Corp. v. Petri-Kine Camera Co., Inc.*,
  451 F.2d 1190 (2d Cir. 1971) ......................................................... 18

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*,
  175 F.3d 266 (2d Cir. 1999) ........................................................... 16

*Parker Waichman Alonso LLP v. Orlando Firm, P.C.*,
  No. 09 Civ. 7401(CM), 2010 WL 1956871 (S.D.N.Y. May 14, 2010) ........... 14

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997) ......................................................... 12

*Philip Morris USA Inc. v. Veles Ltd.*,
  No. 06 CV 2988(GBD), 2007 WL 725412 (S.D.N.Y. Mar. 12, 2007) ......... 21, 23

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Polaroid Corporation v. Polarad Electronics Corporation,*
    287 F.2d 492 (2d Cir. 1961) ........................................................................................ 16

*Polo Fashions, Inc. v. Craftex, Inc.,*
    816 F.2d 145 (4th Cir. 1987) ...................................................................................... 17

*Popular Enters., LLC v. Webcom Media Grp., Inc.,*
    225 F.R.D. 560 (E.D. Tenn. 2004) .............................................................................. 22

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.,*
    754 F.2d 91 (2d Cir. 1985) .......................................................................................... 17

*Reuters Ltd. v. United Press Int'l, Inc.,*
    903 F.2d 904 (2d Cir. 1990) ........................................................................................ 19

*Rio Props., Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007 (9th Cir. 2002) .................................................................................... 21

*Ryan v. Brunswick Corp.,*
    No. 02-CV-0133E(F), 2002 WL 1628933 (W.D.N.Y. May 31, 2002) ...................... 21

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
    450 F.3d 100 (2d Cir. 2006) ........................................................................................ 14

*Thomas Publ'g Co. v. Indus. Quick Search, Inc.,*
    237 F. Supp. 2d 489 (S.D.N.Y. 2002) ........................................................................ 14

*Tiffany (NJ) LLC et al. v. Forbse, et al.,*
    11 Civ. 4976 (NRB) (S.D.N.Y. Aug. 3, 2011) .......................................................... 22

*Tiffany (NJ), LLC v. Dongping,*
    No. 10-61214-CIV, 2010 WL 4450451 (S.D. Fla. Oct. 29, 2010) ............................ 22

*Topps Co., Inc. v. Gerrit J. Verburg Co.,*
    41 U.S.P.Q.2d 1412 (S.D.N.Y. 1996)......................................................................... 17

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.,*
    749 F. Supp. 473 (S.D.N.Y. 1990) ............................................................................. 24

*Virgin Enters. Ltd. v. Nawab,*
    335 F.3d 141 (2d Cir. 2003) ........................................................................................ 15

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
  No. C 06-06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007)....................................23

*Zino Davidoff SA v. CVS Corp.*,
  571 F.3d 238 (2d Cir. 2009) ......................................................................................19

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997)........................................................................13

### Statutes

15 U.S.C. § 1057(b) ..................................................................................................16

15 U.S.C. § 1116(d)(1)(A)........................................................................................23

### Rules

Fed. R. Civ. P. 30(a) .................................................................................................23

Fed. R. Civ. P. 34(b)(2)(A)........................................................................................23

Plaintiffs Gucci America, Inc. ("Gucci"), Balenciaga, S.A. and Balenciaga America, Inc. ("Balenciaga"), Bottega Veneta International S.A. and Bottega Veneta Inc. ("Bottega Veneta"), Yves Saint Laurent America, Inc. and Luxury Goods International (L.G.I.) S.A. ("YSL"), and Kering S.A. ("Kering") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in support of their *ex parte* application for a temporary restraining order, asset restraining order, order authorizing expedited discovery and alternative service by electronic means, and order to show cause for a preliminary injunction against Brand Bag Boutique, Yun Mi's Store, Kou Kou Dai (Buckle the Pocket), Europe and E News, Picasso Trend, Lehui Textile Behalf, Guangzhou Feiteng Junye Gifts Manufacturing Co., Ltd., Shenzhen Lin Jun Leather Co., Ltd., Yiwu Wirbest E-Commercial Firm, Luxury2000, Burberritti Fashion Plaid Bag, Amy Luxury Goods, Sunny Home Store, and Yao Ming and Tracy (collectively, the "Merchant Defendants").[1]

## PRELIMINARY STATEMENT

The sale of counterfeit merchandise on the Internet has increased at unprecedented rates and reached epidemic proportions.  Plaintiffs Gucci, Balenciaga, Bottega Veneta, and YSL achieved their iconic status and reputation in the marketplace by working tirelessly to ensure that they provide consumers with high quality goods that meet rigorous quality standards, and by diligently monitoring and protecting their federally registered trademarks.  However, in spite of their best efforts, Plaintiffs are suffering significant economic injury and irreparable harm to the

---

[1]  Notably, the same form of relief requested herein was granted in *Gucci America Inc., et al. v. Alibaba Group Holding Ltd., et al.*, No. 14 Civ. 5119 (S.D.N.Y.)(PKC) (the "Initial Action") against the following merchants: Hangzhou Yanbei Trading Co., Ltd., Yiwu Bothwiner Fashion Accessory Co., Ltd., Guangzhou Yongxing Leather Goods Mfg., Dongguan Huawang Leather Co., Ltd., Shen Zhen Aiers Watch Co., Ltd., Shenzhen Meigeer Watch Co., Ltd., Shenzhen Babylon Watch Co., Ltd., VANCS Where Boutique, Celebrity Shoe, Jinlong Luxury City, Gucci Fashion Shop, Ladylidy Shop, Coco Fashion Style, Huiming Leather Mall, Hong Kong Longitude and Latitude International Trading, Fashion Zone Ltd., and Star Factory (collectively, the "Initial Merchant Defendants"). *See* Declaration of Robert L. Weigel, dated July 21, 2015 ("Weigel Decl."), at Ex. 17 (ECF No. 3, ordering a temporary restraining order against the Initial Merchant Defendants); Ex. 19 (ECF No. 8, entering a preliminary injunction against the Initial Merchant Defendants).  As such, Plaintiffs incorporate by reference their brief filed in that action.  *See* Weigel Decl., at Ex. 18.

prestige and reputation of their brands from the rampant proliferation of merchants selling counterfeit products on the Internet.  As set forth in detail herein, Merchant Defendants have intentionally misappropriated Plaintiffs' world famous trademarks and willfully exploited the Gucci, Balenciaga, Bottega Veneta, and YSL brands in order to sell counterfeit goods.

The Merchant Defendants blatantly offer for sale to the public various types of counterfeit goods—including handbags, footwear, apparel, and accessories—all bearing unauthorized versions of Plaintiffs' respective trademarks (the "Counterfeit Products").  The Merchant Defendants continually sell and regularly ship their Counterfeit Products to consumers in New York.  The Merchant Defendants exploit Plaintiffs' federally registered trademarks in order to sell Counterfeit Products through their online storefronts on Alibaba.com, Taobao.com, and AliExpress.com (the "Alibaba Stores").  Merchant Defendants use the sophisticated e-commerce platforms provided by the Alibaba Stores to knowingly traffic Counterfeit Products to consumers in the United States with complete disregard for, and in deliberate violation of, well-established trademark laws and Plaintiffs' rights.

Several of the Merchant Defendants sell Counterfeit Products wholesale, and as a result have created a mass market for counterfeit goods (including the materials needed to manufacture such goods[2]) intended not only to deceive the ultimate customer, but also to confuse the general public into believing that the Counterfeit Products are genuine Gucci, Balenciaga, Bottega Veneta, and YSL products.  Every sale of a Counterfeit Product by the Merchant Defendants—whether it be to another merchant, to an unsuspecting or confused consumer, or even to a consumer seeking a cheap "knockoff"—causes post-sale confusion and dilutes the value of

---

[2]  For example, Merchant Defendant Yiwu Wirbest E-Commercial Firm offers Counterfeit Products wholesale, and Merchant Defendant Guangzhou Feiteng Junye Gifts Manufacturing Co., Ltd. offers the materials used to manufacture Counterfeit Products wholesale.

Plaintiffs' brands. The Merchant Defendants continuously exploit Plaintiffs' federally registered trademarks on their Alibaba Stores to list, advertise, promote, and ultimately sell unauthorized and illegal Counterfeit Products. Indeed, several Merchant Defendants have continued to sell Counterfeit Products on their Alibaba Stores even after Plaintiffs notified the Alibaba Defendants[3] of specific infringements occurring on Taobao.com.[4] The Merchant Defendants' actions have caused Plaintiffs irreparable harm and incalculable loss of goodwill among consumers, and there is no doubt that—unless enjoined by this Court—Merchant Defendants will continue their illicit counterfeiting businesses and willfully harm Plaintiffs' businesses as a result.

In light of the foregoing, Plaintiffs respectfully request that this Court issue an order: (i) requiring the Merchant Defendants to show cause why a preliminary injunction should not be issued; (ii) temporarily restraining the Merchant Defendants from manufacturing, importing, exporting, distributing, offering for sale, and selling counterfeit products bearing Plaintiffs' trademarks, and from making any other unauthorized use of Plaintiffs' trademarks; (iii) restraining the Merchant Defendants' assets in order to preserve Plaintiffs' equitable rights to a full accounting and disgorgement of Merchant Defendants' unlawful profits; (iv) authorizing expedited discovery from the Merchant Defendants relating to the unlawful activity at the heart of this dispute; and (v) authorizing alternative service of process via electronic means.

---

[3]  The Alibaba Defendants referenced herein include Defendants Alibaba Group Holding Ltd. ("Alibaba Group"), Alibaba.com Hong Kong Ltd. ("Alibaba.com Hong Kong"), Alibaba.com Ltd. ("Alibaba Ltd."), Alibaba.com Investment Holding Ltd. ("Alibaba Investment Holding"), Alibaba.com Investment Ltd. ("Alibaba Investment"), Alibaba (China) Technology Co., Ltd. ("Alibaba Technology"), Alibaba.com, Inc., Taobao Holding Ltd. ("Taobao Holding"), Taobao China Holding Ltd. ("Taobao China Holding"), Taobao (China) Software Co., Ltd. ("Taobao Software"), and Alipay.com Co., Ltd. ("Alipay") (collectively, the "Alibaba Defendants").

[4]  For example, Plaintiffs' representatives alerted Taobao.com (on several occasions) that Merchant Defendants KouKou Dai (Buckle the Pocket), and Europe and E News were offering for sale Counterfeit Products. Nonetheless, the Merchant Defendants continued to offer Counterfeit Products for sale on Taobao.com.

## STATEMENT OF FACTS

### I.    Plaintiffs' Brands and Trademarks

Plaintiffs are leaders in the design, marketing, and distribution of premium, high-quality luxury items (collectively, "Plaintiffs' Products") offered to the public under the Gucci, Balenciaga, Bottega Veneta, and YSL families of trademarks referenced in Exhibits 1-4 of Plaintiffs' First Amended Complaint, filed herewith (collectively, "Plaintiffs' Marks").  *See* Am. Compl., at Exs.1-4.  For decades, Plaintiffs have developed their respective reputations and distinctive brands across an expanding number of products offered for sale in domestic and international markets.  *See* Declaration of Laurent Claquin, dated July 8, 2015 ("Claquin Decl.") ¶¶ 8–10, 16–17, 24–25.  Plaintiffs have carefully built their reputations by, among other things, adhering to strict quality control standards and their unwavering commitment to provide consumers with the best possible customer service.  *Id.*  ¶¶ 11, 16, 20–22.  As such, Plaintiffs' Products are manufactured strictly pursuant to specific guidelines to ensure that consumers receive the highest quality goods.  *Id.* ¶ 11, 16, 22.  In addition, Plaintiffs spend millions of dollars annually to advertise and promote their brands and products, and, as a result, Plaintiffs' Marks are among the world's most famous and widely-recognized trademarks.  *Id.* ¶¶ 8, 9, 16, 24, 30.

Due to the high quality of Plaintiffs' Products and the extensive marketing and promotional efforts by Plaintiffs, Plaintiffs' Products have outstanding reputations amongst consumers world-wide.  Plaintiffs' Marks themselves are not only well-known among consumers, but are invariably perceived favorably within the industry.  Plaintiffs' Marks unequivocally signify the exclusive source of Plaintiffs' Products, and, as a result, have come to symbolize the high quality, superb construction, and attention to detail of the authentic items offered for sale to the public bearing them.  Plaintiffs earned enormous goodwill among

consumers which has made Plaintiffs' Products among the most sought after in the industry, and resulted in billions of dollars in sales of Plaintiffs' Products.

## II.     The Investigation Into The Merchant Defendants' Infringing Storefronts

Counterfeiting poses a great threat to Plaintiffs' businesses because of the catastrophic damage that Counterfeit Products cause to the goodwill and reputation Plaintiffs spent decades cultivating for Plaintiffs' brands.  Claquin Decl. ¶¶ 84, 86–88.  Accordingly, Plaintiffs routinely investigate the activities of suspected counterfeiters and have brought suit against numerous parties in order protect their brands, trademarks, and businesses.  *See generally, id.*[5]  As such, Plaintiffs commenced a thorough and diligent investigation into the activities of the Merchant Defendants that confirmed the Merchant Defendants are responsible, at least in part, for the marketing, sale, shipment, and delivery of numerous Counterfeit Products to New York and the United States.  *See generally*, Declaration of Robert Holmes dated July 6, 2015 ("Holmes Decl.").  The investigation revealed that in order to lure consumers, the Merchant Defendants not only purposefully incorporate key elements of Plaintiffs' designs into their Counterfeit Products, but also affix exact copies of Plaintiffs' marks onto these products, in order to sell inferior goods that closely resemble Plaintiffs' Products.  *See id.*; *see also* Claquin Decl. ¶¶ 34, 42, 49, 50, 53, 56, 59. 61, 67, 71, 75, 79.

Over the course of their ongoing investigation, Plaintiffs learned that the Merchant Defendants named herein (among others) offered Counterfeit Products for sale on their Alibaba Stores.  Plaintiffs identified numerous items offered for sale, including mass quantities of wholesale "replica" goods, which were purposefully designed to imitate Plaintiffs' Products and

---

[5]     In addition to the Initial Action, Plaintiffs Gucci, Balenciaga, Bottega Veneta and YSL have filed numerous actions in this Court against other defendants who similarly sold counterfeit versions of Plaintiffs' products on their websites, and have obtained injunctive relief and been awarded millions of dollars in damages.  *See* Weigel Decl., at Ex. 2–6.

use Plaintiffs' Marks, on Alibaba.com, Taobao.com, and AliExpress.com, to consumers worldwide, including, throughout the United States.  *See* Holmes Decl. ¶¶ 12–19, 23–28, 32–37; *see also* Claquin Decl. ¶¶ 49, 50, 51, 54, 57, 60, 73.  The Merchant Defendants' Counterfeit Products are modeled after Plaintiffs' authentic products, are affixed with exact copies of Plaintiffs' Marks, and are designed to display other trade dress elements uniquely associated with Plaintiffs.  *See* Claquin Decl. ¶¶ 38–39, 42, 44, 49, 50, 53, 56, 59, 62, 65, 67, 71, 74, 79.  In addition to listing and offering Counterfeit Products, Merchant Defendants use their Alibaba Stores to regularly sell, ship and deliver Counterfeit Products to New York consumers.  *See* Holmes Decl. ¶¶ 3, 5, 22–24, 26–28, 32, 35, 37, at Exs. 6, 7, 9-12, 15, 17.  Through both physical inspection of the Counterfeit Products received by Plaintiffs' investigator and through visual inspection of the Merchant Defendants' Alibaba Stores, Plaintiffs' representatives confirmed that several of the items offered for sale by the Merchant Defendants are poorly constructed counterfeits.  *See* Claquin Decl. ¶¶ 49–50, 63, 65, 68, 72, 76, 80.

A.      **Merchant Defendants Sell Counterfeit Products through Alibaba.com**

Certain Merchant Defendants offer Counterfeit Products bearing Plaintiffs' Marks wholesale purchase to consumers through their Alibaba.com storefronts.  For example, shown below on the left is an image of an authentic Gucci "miss GG original GG canvas hobo," which retails for $1240.  By comparison, shown below on the right is an image of the Counterfeit Product that Merchant Defendant Yiwu Wirbest E-Commercial Firm offers for wholesale to the public on Alibaba.com for $3-$15 per unit (with a minimum of 20 units and maximum of 10,000 units per week).  Holmes Decl. ¶¶ 14-15, at Ex. 2; Claquin Decl. ¶ 44.  The Counterfeit Product below mimics the authentic Gucci bag's overall design, and bears Gucci's federally registered trademark repeating "GG" design.  Claquin Decl. ¶ 44; *see also* Am. Compl., Ex. 1 (U.S. Reg.

No. 4,229,081). The Counterfeit Product is designed to mislead consumers into believing that it is an authentic Gucci product.

**AUTHENTIC**             **COUNTERFEIT**



Similarly, shown below is an image of the Counterfeit Product that Defendant Shenzhen Lin Jun Leather Co., Ltd. until recently offered wholesale on Alibaba.com to consumers in the United States for $93 per unit, with a minimum of 100 units per order; each unit included a box labeled "Bottega Veneta."  *See* Holmes  Decl. ¶ 12-13, at Ex. 1; *see also* Claquin Decl. ¶ 39.  The Counterfeit Product below mimics all elements of the design of the authentic Bottega Veneta "Moro Intrecciato Calf Briefcase," which retails for $2,650, including Bottega Veneta's federally registered Intrecciato design, and was marketed alongside packaging making unauthorized use of Bottega Veneta's trademark name.  Claquin Decl. ¶ 39; *see also* Am. Compl., at Ex. 3 (U.S. Reg. Nos. 4,527,371; 1,086,395).