

The Merchant Defendants blatantly misappropriate Plaintiffs' Marks in order to advertise, describe, promote and sell Counterfeit Products on Taobao.com, thereby increasing the likelihood of consumer confusion between the Counterfeit Products and Plaintiffs' Products.

### C. Merchant Defendants Selling Counterfeit Products through AliExpress.com

Certain Merchant Defendants market and sell Counterfeit Products bearing Plaintiffs' Marks on AliExpress.com.  For example, shown below on the left is an image of an authentic Gucci "vintage web original GG canvas Boston bag," which retails for $1250.  The Counterfeit Product offered by Merchant Defendant Brand Bag Boutique ("Brand Bag") on AliExpress.com is shown on the right below.  The Counterfeit Product sells for $18.59 and the seller is offering 825 units. The bag is described as "luxury guchi tote bag bucket brand designer handbag" and mimics the authentic item.  Claquin Decl. ¶ 65.  The Counterfeit Product also bears a copy of Gucci's federally registered trademark green-red-green stripe and a confusingly similar copy of the repeating "GG" design.  *See* Am. Compl., at Ex. 1 (U.S. Reg. Nos. 4,229,081; 1,122,780). Defendant Brand Bag sold the Counterfeit Product below on AliExpress.com to Plaintiffs' investigator and shipped it to the United States.  Holmes Decl. ¶ 33, at Ex. 13.  Plaintiffs' representatives inspected the bag and confirmed it is counterfeit.  Claquin Decl. ¶ 65.

10

|  AUTHENTIC  |  COUNTERFEIT  |
|---|---|
|  |  |

Further, shown below on the left is an image of an authentic Gucci "soho leather disco bag," which retails for $980, and on the right, the Counterfeit Product offered by Merchant Defendant Luxury2000 on AliExpress.com for $280. Claquin Decl. ¶¶ 70-71. The Counterfeit Product below not only mimics the design and ornamentation of the authentic version, but also uses exact copies of Gucci's federally registered trademarked GUCCI name and interlocking non-facing "GG" design. *See* Am. Compl., at Ex. 1 (U.S. Reg. Nos. 878,292 and 3,039,630). Luxury2000 sold the Counterfeit Product below to Plaintiffs' investigator on AliExpress.com and shipped it to New York. Holmes Decl. ¶ 35, at Ex. 15. Plaintiffs inspected the bag and confirmed it to be counterfeit. Claquin Decl. ¶ 72.

11

|  **AUTHENTIC** | **COUNTERFEIT** |
|---|---|
|  |  |

The Counterfeit Products offered by Merchant Defendants on AliExpress.com mislead consumers both initially, by using Plaintiffs' trademark names in order to lure consumers to these items, but also indefinitely, as each is designed to mimic Plaintiffs' Products and uses exact copies of one or more of Plaintiffs' Marks, thereby increasing the likelihood of broader post-sale consumer confusion.

## ARGUMENT

### III. THE MERCHANT DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION UNDER NEW YORK'S LONG-ARM STATUTE

The Merchant Defendant are subject to personal jurisdiction in New York State and in this District. "[W]here a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).[6] The Merchant Defendants' infringing activities satisfy the test for long-arm jurisdiction under Section 302(a)(1) and Section 302(a)(3) of the New York Civil Practice Law & Rules ("CPLR") because all of the Merchant Defendants have (i) offered and/or supplied Counterfeit

---

[6] Unless expressly stated otherwise, all internal quotations and citations are omitted herein.

Products to New York consumers; (ii) accepted money from New York consumers; (iii) shipped Counterfeit Products to New York; (iv) committed tortious acts of trademark infringement in New York; and (v) caused injuries in New York.

### A. The Merchant Defendants Are Subject to Personal Jurisdiction Under CPLR § 302(a)

Section 302(a)(1) of the CPLR confers jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state" and in so doing "purposefully avails itself of the privilege of conducting activities within New York," *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). Courts have long held that the sale of counterfeit products to New York customers "is sufficient to invoke jurisdiction," so long as "there is a substantial relationship between the transaction and the claim asserted." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010). Accordingly, the Merchant Defendants that sold and shipped counterfeit products to Plaintiffs' investigator in New York are subject to personal jurisdiction in New York as "shipments [of infringing goods] were purposeful and substantially related to plaintiffs' claim of trademark infringement." *Baron Phillipe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996).

In addition, the Merchant Defendants are subject to personal jurisdiction based on the highly sophisticated and fully-interactive "nature and quality of [their] commercial activity . . . conduct[ed] over the internet." *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000).[7] The Merchant Defendants advertise and offer for sale Counterfeit Products through the Alibaba Stores that are highly interactive and accessible in New York, and

---

[7] *See also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251-52 (2d. Cir. 2007)(adopting the test articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) for measuring the nature and quality of a website's commercial activity for purposes of establishing personal jurisdiction).

that provide New York consumers the opportunity to purchase and receive (via regularly shipping) Counterfeit Products in New York.[8]  By advertising and offering for sale Counterfeit Products on the Alibaba Stores, and offering to ship Counterfeit Products anywhere in the United States, the Merchant Defendants are subject to the personal jurisdiction of this Court.  *See Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, No. 09 Civ. 7401(CM), 2010 WL 1956871, at *11 (S.D.N.Y. May 14, 2010) (finding law firm subject to personal jurisdiction in New York where it sent sign-up packages and retainer forms to individuals in New York).

The Merchant Defendants are also subject to personal jurisdiction under Section 302(a)(3) of the CPLR, which provides for personal jurisdiction where:

> (1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; [and] (5) the defendant derives substantial revenue from interstate or international commerce.

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006).  "Trademark infringement is a tort for jurisdictional purposes," and the Merchant Defendants have caused injury in New York by offering for sale and selling Counterfeit Products to consumers in New York because "[i]njury within a state includes harm to a business in the New York market in the form of lost sales or customers."  *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 241-42 (S.D.N.Y. 2010).

---

[8] *See, e.g.*, *Chloé*, 616 F.3d at 171 (holding courts may assert personal jurisdiction over an out-of-state business serving a nation-wide market through an interactive website); *see also Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) (advising that if a defendant "does not want its website to subject it to personal jurisdiction here [in New York], it is free to set up a 'passive' website that does not enable [the defendant] to transact business in New York").

      **B.**     **Exercising Personal Jurisdiction over the Merchant Defendants Comports with Due Process**

The facts set forth herein demonstrate that this Court's exercise of personal jurisdiction over the Merchant Defendants meets the requirement of "minimum contacts" and the standard of "reasonableness" required for due process. *Chloé*, 616 F.3d at 171-72 (holding that the defendant had purposefully directed sufficient contacts with New York "by offering [counterfeit products] for sale to New York consumers on the . . . website and by selling [counterfeit products] to New York consumers," so to "not offend due process to require [defendant] to answer in New York for the consumer confusion allegedly caused there . . . ."); *see also* Holmes Decl. ¶¶ 3, 5, 22-28, 32, 35, 37.

**IV.**    **PLAINTIFFS MEET THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

To obtain either a temporary restraining order or a preliminary injunction, the movant must establish (1) irreparable harm, and (2) either (a) a "likelihood of success on the merits" or (b) the existence of "serious questions going to the merits [of the case] and a balance of hardships tipping decidedly in [the movant's] favor." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003). In cases alleging trademark infringement under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, as amended (the "Lanham Act"), courts in this Circuit routinely find irreparable harm worthy of injunctive relief where plaintiffs, as is the case here, face the prospective loss of goodwill and the threat of loss of control over the reputation of their trademarks. *See, e.g.*, *Bulman v. 2BKCo, Inc.*, 882 F. Supp. 2d 551, 564-65 (S.D.N.Y. 2012).

      A.      **Plaintiffs Are Likely to Succeed on Their Lanham Act Claims**

            1.      **Plaintiffs Are Likely to Succeed on Their Trademark Counterfeiting Claims**

To prevail on their trademark counterfeiting claims, Plaintiffs must prove (1) that their respective marks are entitled to protection; and (2) that there is a likelihood of confusion between the counterfeit and authentic products. *See, e.g.*, *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). *First*, Plaintiffs have demonstrated that they own the rights, titles, and interests in their federally registered trademarks which constitutes *prima facie* evidence of the validity of Plaintiffs' Marks, as well as Plaintiffs' exclusive rights to use their marks in commerce. *See* 15 U.S.C. § 1057(b); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F. Supp. 735, 740 (S.D.N.Y. 1985); *see, also, e.g.*, Claquin Decl. ¶¶ 4, 7, 9, 14, 23–24, 29–30, 37; Compl., Exs. 1–4. *Second*, Plaintiffs have shown the Merchant Defendants' willful and unlawful use of Plaintiffs' Marks in connection with the sale of Counterfeit Products is likely to cause consumer confusion, under the factors articulated by the Second Circuit in *Polaroid Corporation v. Polarad Electronics Corporation*: (1) the strength of the plaintiff's trademarks; (2) the similarity between the parties' trademarks; (3) the competitive proximity of the parties' products in the marketplace; (4) the likelihood that the senior user will bridge the gap, if any, between the products; (5) evidence of actual confusion; (6) the defendant's good faith; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. 287 F.2d 492, 495 (2d Cir. 1961).

While such factors uniformly weigh in Plaintiffs' favor, "[i]n this case, however, the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003). Consumer confusion is assumed in the case of counterfeit goods as

"the very purpose of the individuals marketing the cheaper [and virtually identical] items is to confuse the buying public into believing it is buying the true article." *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979). Plaintiffs are entitled to "a presumption of a likelihood of confusion" among consumers based on the Merchant Defendants "attempt to capitalize upon the popularity of, and demand for" Plaintiffs' Products. *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). As such, the *Polaroid* analysis is not required. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y. 1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors.").[9]

### 2. Plaintiffs Are Likely to Succeed on Their State Law Claims

Plaintiffs have shown a likelihood of success on their claims under the Lanham Act, which supports a finding of a likelihood of success on trademark related claims under New York State law. *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 300-02 (S.D.N.Y. 2002) (likelihood of success on federal infringement claims supports likelihood of success on New York infringement, unfair competition, dilution, and deceptive business practices claims).

### B. Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction

If this Court does not issue an injunction, Plaintiffs will suffer immediate, irreparable, and actual harm in the form of unquantifiable lost goodwill and sales, and the resulting loss of control over the reputation of their trademarks, which is neither "calculable nor precisely compensable." *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir.

---

[9] Even if the Court were to undertake a factor-by-factor analysis, the likelihood of confusion is still clearly established for the same reasons articulated by Plaintiffs in the Initial Action. *See* Weigel Decl., Ex. 18. In addition, Plaintiffs are entitled to a preliminary injunction under the alternate standard for a preliminary injunction, *i.e.*, there are "sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly in [Plaintiffs'] favor." *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002).

1985).  As stated by the Second Circuit, irreparable injury "almost inevitably follows" due to consumer confusion caused by counterfeiting:

> Indeed, confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors.  Yet to prove the loss of sales due to infringement is also notoriously difficult.  Furthermore, if an infringer's product is of poor quality, or simply not worth the price, a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.

*Omega Importing Corp. v. Petri-Kine Camera Co., Inc.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

### 1. The Merchant Defendants Will Continue to Damage Plaintiffs' Goodwill and Reputation

Merchant Defendants, through their Alibaba Stores, saturate Plaintiffs' global market by introducing wholesale Counterfeit Products that are deceptively similar to Plaintiffs' products and bear copies of Plaintiffs' Marks.  Simply stated, each sale of a Counterfeit Product by a Merchant Defendant enables instant and continuous post-sale confusion beginning with the purchaser, but extending to countless potential purchasers who lack the sophistication to identify the inferior item as a counterfeit and thus invariably associate it with Plaintiffs.   Without an injunction, the Merchant Defendants will continue to taint the market with Counterfeit Products and, as a result, cause irreparable harm to the goodwill and reputation that Plaintiffs worked decades to build.  *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 651 F. Supp. 2d 72, 85 (S.D.N.Y. 2009) (finding the "[t]he unauthorized use of a mark . . . invariably threatens injury to the economic value of the goodwill and reputation associated with a . . . mark" and granting an injunction where "there is no assurance in the record" to support the contention that the unauthorized users will stop).

### 2. The Merchant Defendants Will Continue to Interfere With Plaintiffs' Right to Control the Quality of Goods Bearing Plaintiffs' Marks

An injunction is appropriate here because, without court intervention, Plaintiffs have no ability to control the quality of the Counterfeit Products to which the Merchant Defendants

illegally affix counterfeit versions of Plaintiffs' Marks.  As the Second Circuit has noted, "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).  Thus, an injunction is necessary where "a higher incidence of substantial sales of counterfeit goods, which are invariably non-conforming and inferior" will "harm [Plaintiffs'] reputation and diminish the value of its trademark." *Id.* at 244.

      **C.**    **The Balance of Hardships Favors Plaintiffs**

The balance of hardships tilts decidedly in Plaintiffs' favor here where "the only hardship that will befall Defendants in this case is the imposition of an obligation to comply with the law, while [Plaintiffs] face[] continued loss of goodwill and ability to exploit the trademarks that [Plaintiffs themselves] own[] if an injunction does not issue." *Gayle Martz, Inc.*, 651 F. Supp. 2d at 85.  Countless consumers will continue to be misled by the Merchant Defendants' unlawful conduct and no later action by this Court can retrieve the resulting loss of goodwill Plaintiffs will endure.  *See, e.g.*, *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990) (noting that the "irreparable harm discussed earlier" meets plaintiff's burden under the balance of hardships).

      **D.**    **An Order Enjoining the Merchant Defendants' Activities Will Also Serve the Public Interest**

An injunction serves to protect the public interest.  *See Gayle Martz, Inc.*, 651 F. Supp. 2d at 85 ("[T]he public interest lies in the enforcement of the Acts of Congress, especially the prevention of consumer confusion as espoused by the Lanham Act.")  "Trademark laws exist to protect the public from confusion" and the Merchant Defendants, by offering Counterfeit Products to the consuming public, have "encourage[d] consumer confusion in the post-sale

context" and have succeeded in creating such confusion. *Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107-08 (2d Cir. 2000). The Merchant Defendants intentionally misuse Plaintiffs' Marks in listing, promoting, and advertising the Counterfeit Products on the Alibaba Stores in order to mislead consumers into believing that they are purchasing authentic Gucci, Balenciaga, Bottega Veneta, or YSL Products. When a Merchant Defendant's Counterfeit Product enters the marketplace, it invariably creates post-sale confusion among consumers that not only harms Plaintiffs but defrauds the market and the general public, who are overwhelmingly law abiding and appreciate, respect, and admire Plaintiffs' Brands. As the Second Circuit concluded in *Hermès*:

> It . . . is important to recognize that the enforcement of trademark laws benefits consumers . . . [and] to the extent that trademarks provide a means for the public to distinguish between manufacturers, they also provide incentives for manufacturers to provide quality goods. Traffickers of these counterfeit goods, however, attract some customers who would otherwise purchase the authentic goods. Trademark holders' return to their investments in quality are thereby reduced. This reduction in profits may cause trademark holders to decrease their investments in quality . . . [which] in turn harms those consumers who wish to purchase higher quality goods.

219 F.3d at 108. In addition, the policies and position of the United States government in combatting the counterfeiting epidemic show the public harm caused by counterfeiting is recognized as a real threat. Weigel Decl. Exs. 8-13. As such, this factor also weighs heavily in favor of granting Plaintiffs the injunctive relief sought.

## V.     PLAINTIFFS ARE ENTITLED TO AN ORDER RESTRAINING THE MERCHANT DEFENDANTS' TRANSFER OF ASSETS

In light of the transitory nature of the Merchant Defendants' unlawful businesses, an asset freeze order is appropriate to preserve Plaintiffs' right to the relief sought in the First Amended Complaint, including an accounting and disgorgement of the Merchant Defendants' illicit profits *See* Am. Compl. p. 191. Because the Court has personal jurisdiction over defendants, the Court

also has the authority to restrain the defendants' assets wherever they are located.  *See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 129-30 (2d Cir. 2014) (holding that personal jurisdiction over the party authorizes the court to freeze assets under the party's control both "within or without the United States.").  In the absence of an order restraining the Merchant Defendants' assets, there will be nothing to stop the Merchant Defendants from draining their accounts, thereby depriving Plaintiffs of the equitable remedies to which they are entitled under the Lanham Act.

### VI. PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Pursuant to Federal Rule of Civil Procedure 4(f)(3), the Court may authorize service of process by any "means not prohibited by international agreement," including service via email or other electronic means, so long as the alternative method of service is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988(GBD), 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007).  Alternative service of process by electronic means is especially appropriate where, as is the case here, it "may be the only means of effecting service of process" based on the nature of the Merchant Defendants' businesses and based on prior communications via the Alibaba Stores.  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002).  Each Merchant Defendant operates via online storefront and as such electronic communication (via email or otherwise) is critical to its counterfeiting business, service via electronic means is the most reliable form of contact.[10]

---

[10] Courts have authorized alternative service by email and other electronic means under similar circumstances where the Internet and email communications were essential components of the defendant's business.  *See Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) (authorizing service by email where the defendant's website directed customers to communicate with it by email and finding

*(Cont'd on next page)*

Numerous courts in this District have authorized service via email in similar counterfeiting cases involving defendants who, like the Merchant Defendants here, appeared to be based in China.  *See* Weigel Decl., Ex. 14 (*Gucci Am., Inc., et al. v. Bagsmerchant LLC, et al.*, 10 Civ. 2911 (DAB) (S.D.N.Y. Apr. 12, 2010)); Ex. 15 (*Tiffany (NJ) LLC, et al. v. Forbse, et al.*, 11 Civ. 4976 (NRB) (S.D.N.Y. Aug. 3, 2011)); Ex. 16 (*Nat'l Football League, et al. v. Zhu, et al.*, 13 Civ. 5416 (HB) (S.D.N.Y. Aug. 14, 2013)).

District Courts have also permitted other electronic forms of service tailored to notify defendants of process, when authorized under the Federal Rules of Civil Procedure and not prohibited by the Hague Convention.  *See* Weigel Decl., Ex. 17, ECF No. 14, dated July 24, 2014, at 10 (Section IV ordering alternative service via merchant shopping carts); *see also F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *6 (S.D.N.Y. Mar. 7, 2013) (permitting service via Facebook message and email), *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co. Ltd.*, No. 08 CV 2593, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) (holding that the Hague Convention does not prohibit service via email and ordering email service on Chinese Defendants).  Given the nature of Merchant Defendants businesses, electronic service is the most likely method of service to provide Merchant Defendants with prompt, actual notice of Plaintiffs' claims and is not prohibited by international agreement.

---

*(Cont'd from previous page)*

that "[i]nasmuch as [defendant] conducts its business through these means of communication, such are reasonably calculated to apprise [defendant] of the pendency of this action and afford it an opportunity to respond"); *Tiffany (NJ), LLC v. Dongping*, No. 10-61214-CIV, 2010 WL 4450451, at *3 (S.D. Fla. Oct. 29, 2010) (authorizing service upon defendant believed to be in China by publication on Tiffany's enforcement website); *see also Popular Enters., LLC v. Webcom Media Grp., Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (finding service by email "fully authorized" under Rule 4(f)(3) where "it is the method of service most likely to reach defendant"); *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 721 (Bankr. N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.").

Court-directed electronic service of Merchant Defendants satisfies due process because it is reasonably calculated to notify and afford them the opportunity to object since "defendants conduct business extensively, if not exclusively, through their Internet websites." *Philip Morris*, 2007 WL 725412, at \*\*2-3. The Merchant Defendants regularly use electronic means, namely their online storefronts and electronic shopping carts, as their preferred form of contact to correspond with their customers regarding the Counterfeit Products. Indeed, given that virtually all of Plaintiffs' investigators' communications with the Merchant Defendants occurred electronically via their Alibaba Stores, s*ee* Holmes Decl. ¶¶ 23-28, 32-37, *id.*, at Exs. 6-17, service through electronic means is the most effective way for Plaintiffs to adequately serve the Merchant Defendants. *See Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at \*2 (N.D. Cal. Apr. 17, 2007) (approving service through email accounts that "have been effective means of communicating with the defendants").

## VII. PLAINTIFFS ARE ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Plaintiffs respectfully request that this Court issue an order allowing expedited discovery from the Merchant Defendants to ascertain the full scope of the Merchant Defendants' illegal activities, and the source and location of profits derived from the sale of Counterfeit Products. Indeed, the importance of counterfeiters' business records is demonstrated by the fact that Congress has enacted a specific statute authorizing courts to order the *ex parte* seizure of "records documenting the manufacture, sale, or receipt of things involved in" counterfeiting. 15 U.S.C. § 1116(d)(1)(A).

District courts have broad power to permit expedited discovery and require early document production in appropriate cases. *See* Fed. R. Civ. P. 30(a), 34(b)(2)(A). Expedited discovery may be granted upon a showing of "(1) irreparable injury, (2) some probability of

success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that defendant will suffer if expedited relief is granted." *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 CIV. 5620 (JFK), 1994 WL 719696, at *3 (S.D.N.Y. Dec. 28, 1994); *see also Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990). Motions for expedited discovery are evaluated "under the flexible standard of reasonableness and good cause," and based on "the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y.2005); *see also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y.2007). Where the moving party has established the substantiality of its claims and shown "good cause" for the motion, expedited discovery is appropriate. *Ayyash*, 233 F.R.D. at 327; *see also Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (finding good cause for expedited discovery where plaintiff "alleged a prima facie case . . . sufficient for purposes of this motion" and made clear the necessity of expedited discovery for the effective pursuit of his claims).

As evidenced by the Plaintiffs' supporting declarations, the Merchant Defendants have engaged in numerous deceptive practices that pose an imminent threat to Plaintiffs' businesses. Yet only through an order by this Court requiring discovery regarding the extent of the Merchant Defendants' counterfeiting operations can Plaintiffs gain a full and accurate picture of the Merchant Defendants' infringing activities, ascertain the true damage, and ensure the complete cessation of the Merchant Defendants' infringement of Plaintiffs' Marks and sale of Counterfeit Products. As such, Plaintiffs have established "good cause" for expedited discovery from the Merchant Defendants. *See adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635(LGS),

2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (allowing expedited discovery where plaintiff had a potentially meritorious claim but would otherwise be unable to pursue it); *Digital Sin Inc. v. Does 1–27*, No. 12 Civ. 3873(JMF), 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012) (same).

In addition, the harm Plaintiffs face from the Counterfeit Products supplied by the Merchant Defendants is actual, imminent, and continuous, making expedited discovery regarding the true scope of their illegal enterprise all the more reasonable. Given the transient nature of Merchant Defendants illicit businesses, it is only reasonable to expect that Plaintiffs will lose the opportunity for meaningful discovery as time passes. As such, Plaintiffs respectfully request that this Court order expedited discovery from the Merchant Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant an order (i) requiring the Merchant Defendants to show cause as to why a preliminary injunction should not be issued; (ii) temporarily restraining the Merchant Defendants from selling the Counterfeit Products or making any other unauthorized use of Plaintiffs' Marks; (iii) restraining the Merchant Defendants' assets; (iv) authorizing alternative service of process by electronic means as described herein; and (v) authorizing expedited discovery from the Merchant Defendants.

Dated: New York, New York
July 21, 2015

                Respectfully submitted,

                GIBSON, DUNN & CRUTCHER, LLP

                By:     Robert L. Weigel
                        Robert Weigel
                        Howard S. Hogan
                        Alison L. Wollin

Anne M. Coyle
Kimberly L. Friedman

200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc., Balenciaga S.A., Balenciaga America, Inc., Bottega Veneta S.A., Bottega Veneta Inc., Yves Saint Laurent America, Inc., Luxury Goods International (L.G.I.) S.A., and Kering S.A.*