**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

R. Bruce Rich
1+ 212 310 8170
bruce.rich@weil.com

August 6, 2015

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY  10007

Re:     *Gucci America, Inc. v. Alibaba Group Holding*, Ltd., 1:15-cv-03784 (PKC)

Dear Judge Castel:

Pursuant to the Court's July 23, 2015 Order (Dkt. 20), I write on behalf of the Alibaba Defendants to advise the Court of the scope and substance of the Alibaba Defendants' contemplated motion to dismiss directed to the First Amended Complaint ("Am. Compl."). As described more fully below, we intend to move to dismiss (i) all claims as against seven of the eleven Alibaba Defendants pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and (ii) the RICO (18 U.S.C. § 1962(c)) and conspiracy to violate RICO (18 U.S.C. § 1962(d)) claims against the remaining Alibaba Defendants pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a cause of action.

At the September 11 conference, we would welcome the opportunity to address not only the intended motion to dismiss, but also how the balance of the action should be treated while awaiting its disposition.  As the Court is by now aware, even if pared down as to the number of defendants and stripped of its RICO allegations, the Amended Complaint – nearly 200 pages long, excluding exhibits – levels sweeping accusations of illegal conduct which will be extraordinarily costly and burdensome to defend and dispel.  Before our clients are put to that burden, we would request the opportunity to explore with the Court means of mitigating it – if not avoiding it altogether.  We have in mind one or more of (i) a stay of discovery pending disposition of the motion to dismiss; (ii) early mediation to attempt to resuscitate a year's worth of now-suspended settlement discussions; and/or (iii) supervised discovery aimed at focusing and streamlining what otherwise promises to be a gargantuan, logistically complex cross-border effort, including translations of documents written by French and Chinese nationals.

Honorable P. Kevin Castel  
August 6, 2015  
Page 2

**Weil, Gotshal & Manges LLP**

**Lack of Personal Jurisdiction**

Plaintiffs have sued eleven different entities that they refer to collectively as the "Alibaba Defendants." Although Plaintiffs allege that certain of these entities operate the Internet-based platforms that allegedly have been used by certain merchants to list and sell counterfeit merchandise, certain other of the defendant entities are foreign companies with no alleged presence in or connection to New York.[1] Accordingly, we plan to move to dismiss for lack of personal jurisdiction on behalf of the following entities:

- Alibaba.com Ltd., a Chinese holding company (Am. Compl. ¶ 27);
- Alibaba.com Investment Holding Ltd., a British Virgin Islands holding company (*id.* ¶ 29);
- Alibaba.com Investment Ltd., a British Virgin Islands holding company (*id.* ¶ 30);
- Alibaba (China) Technology Co., Ltd., a Chinese company (*id.* ¶ 31);
- Alibaba.com, Inc., a Delaware company, with an office in California (*id.* ¶¶ 32, 54(m)(ii));
- Taobao Holding Ltd., a Cayman Islands holding company (*id.* ¶ 33); and
- Taobao (China) Software Co., Ltd, a Chinese company (*id.* ¶ 35).

Plaintiffs allege conclusorily that the Court has specific jurisdiction over each of these foreign entities, but the Amended Complaint fails to allege that any of them transacted business in New York, committed a tortious act causing injury within New York, or purposefully availed itself of New York in any way.[2] *See generally* New York C.P.L.R. §§ 302(a)(1), (3); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 786-94 (2d Cir. 1999). Plaintiffs, accordingly, have failed to make a *prima facie* showing that the Court has personal jurisdiction over any of these entities. *See Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (holding that a *prima facie* showing "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if

---

[1] We do not intend to challenge this Court's personal jurisdiction over Alibaba Group Holding Ltd.; Alibaba.com Hong Kong Limited, which operates the Alibaba.com and AliExpress.com platforms (Am. Compl. ¶ 28); Taobao China Holding Ltd., which operates Taobao.com (*id.* ¶ 34); or Alipay.com Co., Ltd., which provides payment processing services for the Alibaba platforms (*id.* ¶ 36).

[2] The Amended Complaint does not refer to these entities in any of the forty-three subparts of the paragraph that purports to explain why "[p]ersonal jurisdiction is proper over all Defendants." (*See* Am. Compl. ¶ 54.) Plaintiffs' conclusory allegations that the Alibaba Defendants are alter egos of one another are not sufficient to establish personal jurisdiction over these seven entities.

credited[,] would suffice to establish jurisdiction over the defendant") (alteration in original) (internal quotations omitted).

**Failure to State a RICO Claim**

Plaintiffs' counterfactual attempt to portray the Alibaba Defendants as bad actors culminates in deficiently pled – and implausible – RICO and RICO conspiracy claims. Plaintiffs allege that the Alibaba Defendants knowingly provide online marketplaces for, and a variety of ancillary services to, the Merchant Defendants and unidentified co-conspirators who offer for sale allegedly counterfeit Kering-brand goods. (*See* Am. Compl. ¶ 4.) Plaintiffs contend that by these alleged acts the Alibaba Defendants conspired with the Merchant Defendants and unidentified co-conspirators to – and did – violate RICO. (*See id.* ¶¶ 376, 403-04.) As detailed below, Plaintiffs do not (and cannot) plead the necessary elements of these claims.

To state a cognizable RICO claim under section 1962(c), a plaintiff must adequately allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly . . . participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Aronov v. Mersini*, No. 14-cv-7998 (PKC), 2015 WL 1780164, at *3 (S.D.N.Y. Apr. 20, 2015) (alteration in original) (internal quotations omitted). The requisite association-in-fact enterprise, in turn, must have (1) a common purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit pursuit of the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "bare assertion of conspiracy will not suffice." *Id.* at 556. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs' RICO claims are deficient for a number of reasons, including that the Amended Complaint fails to allege a common purpose between the Merchant Defendants and the Alibaba Defendants. In this regard, Plaintiffs provide nothing more than a formulaic recitation of the elements of a section 1962(c) claim. They allege, for example, that "the Alibaba Defendants, the Merchant Defendants, and unidentified co-conspirators using the Alibaba Marketplaces . . . have joined together to form an enterprise in fact whose purpose is to sell and profit from the sale of counterfeit goods" and to "carry[] out an ongoing criminal enterprise." (Am. Compl. ¶¶ 375-76.) This type of purely conclusory allegation – devoid of any supporting facts – cannot withstand a motion to dismiss. *See Aronov*, 2015 WL 1780164, at *2. Indeed, the suggestion of a common purpose among the defendants is contradicted by the disclosures set forth in the Alibaba Group Holding Limited Form F-1 Registration Statement, filed with the U.S. Securities and Exchange Commission on May 6, 2014 ("F-1"), on which Plaintiffs rely in the Amended Complaint and which is thus appropriately considered on a motion to dismiss. *See, e.g., Ferro v. Metro. Ctr. for Mental Health*, No. 13 CIV. 2347 PKC, 2014 WL 1265919, at *3 (S.D.N.Y. Mar. 27, 2014). In the F-1, the Alibaba Defendants disclosed, *inter alia*, that they: actively

Honorable P. Kevin Castel  
August 6, 2015  
Page 4

**Weil, Gotshal & Manges LLP**

combat counterfeiting, including through robust notice-and-takedown procedures and termination of repeat infringers; conduct random checks using third parties to purchase suspected counterfeit goods; have worked with more than 1,000 major brand owners and several industry associations to enhance the effectiveness of Alibaba's takedown procedures and other anti-counterfeiting measures; and actively cooperate with law enforcement and other government authorities to eradicate the sources of counterfeit goods. *See* F-1 at 180-81. These significant anti-counterfeiting efforts undercut Plaintiffs' conclusory allegations that the Alibaba Defendants share a common purpose with the Merchant Defendants and the unidentified co-conspirators.

Another fatal flaw in Plaintiffs' RICO claims is the lack of any alleged relationship among the Merchant Defendants and the unidentified co-conspirators. The purported enterprise Plaintiffs allege situates the Alibaba Defendants at the hub of the enterprise, with the Merchant Defendants and the unidentified co-conspirators each a spoke. (*See, e.g.*, Am. Compl. ¶ 375.) In this Circuit, however, this type of alleged conspiracy, in which the "spokes" of the purported enterprise are not alleged to have joined together to act with a common purpose to benefit one another – commonly referred to as a "rimless hub-and-spoke association" – has consistently been held not to meet the RICO enterprise "relationship" requirement. *See, e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (holding that "[f]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes") (citation omitted); *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (rejecting plaintiff's assertion of an association-in-fact enterprise because "it appears at worst that several borrowers each committed a similar but independent fraud with the aid of a particular lender, and that each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower"; "[t]hat series of discontinuous independent frauds is no more an 'enterprise' than it is a single conspiracy"), *aff'd*, 27 F.3d 763 (2d Cir. 1994). Plaintiffs here do not allege *any relationship at all* among the various Merchant Defendants and the unidentified co-conspirators, nor could they.³ Moreover, the notion that the Merchant Defendants – likely competitors of one another – conspired with one another as well as with the Alibaba Defendants is not plausible. Judicial experience and common sense, *Iqbal*, 556 U.S. at 679, as well as the absence of any factual allegations that, if taken as true, would establish the existence of a plausible RICO enterprise thus dictate dismissal of the RICO claims.

Plaintiffs cannot remedy these deficiencies by pleading a RICO enterprise consisting solely of the Alibaba Defendants. To establish liability under section 1962(c), a plaintiff must allege and prove the existence of two distinct elements: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same

---

³ Plaintiffs' RICO claims also suffer from failure to adequately allege mail and wire fraud as predicate acts. The only allegations pled with the particularity required by Rule 9(b) are intentional purchases of counterfeit goods by Plaintiffs' investigator. (*See, e.g.*, Am. Compl. ¶¶ 388(e), 391(d).) However, because the investigator *intended to purchase counterfeits* and, according to the Amended Complaint, received counterfeit goods *as intended*, these allegations lack the necessary element of deception.

Honorable P. Kevin Castel  
August 6, 2015  
Page 5

**Weil, Gotshal & Manges LLP**

'person' referred to by a different name." *Cedric Kushner Promotions, Ltd.*, 533 U.S. 158, 161 (2001); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) (holding that subsidiaries and affiliates of a corporation do not constitute an association-in-fact enterprise distinct from the parent corporation). Any attempt by Plaintiffs to allege that each of the Alibaba Defendants is a "person" distinct from the "enterprise" would conflict with their allegations that the Alibaba Defendants are "a single business unit" (Am. Compl. ¶ 6) and that they "operate as a single unit, sharing common ownership, the Alibaba Group, and a unity of interest" (*id.* ¶ 54(p)(i)). Taking these allegations as true for purposes of a Rule 12 motion, the Alibaba Defendants alone cannot form a RICO enterprise.

The Alibaba Defendants also plan to move on similar grounds to dismiss the conspiracy to violate RICO count. To state a claim for conspiracy to violate RICO, pursuant to section 1962(d), the plaintiff must "prove the existence of an agreement to violate RICO's substantive provisions." *Aronov*, 2015 WL 1780164, at *7 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999)). The plaintiff must establish that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit*, 187 F.3d at 244. Conclusory allegations of an agreement are insufficient to state a RICO conspiracy claim. *4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014).

Plaintiffs' section 1962(d) claim posits the existence of an agreement based on the Alibaba Defendants' provision of online marketplaces and other services to its users, who include the Merchant Defendants. (Am. Compl. ¶¶ 403-04.) But the mere provision of online platforms and services to millions of sellers – a miniscule percentage of whom are claimed to engage in the sale of counterfeit goods – provides no basis to infer that the Alibaba Defendants and the Merchant Defendants *agreed* to commit RICO predicate acts or to form a RICO conspiracy. The allegation that the Alibaba Defendants' "knowledge, intent, and agreement to engage in [a] scheme to promote and sell Counterfeit Products is demonstrated by the obviously counterfeit nature of many of the goods sold on the Alibaba Marketplaces" (*id.* ¶ 404), is an attempt to *avoid* pleading facts demonstrating the requisite agreement by the Alibaba Defendants. Indeed, the above-noted anti-counterfeiting measures the Alibaba Defendants have implemented, as well as, *inter alia*, user agreements that prohibit infringing conduct, bely the conclusory allegation that the Alibaba Defendants have actively conspired with the Merchant Defendants to promote the sale of counterfeit goods. Plaintiffs also fail to allege any relationship or contact among the Merchant Defendants, let alone an agreement among them to commit the asserted predicate acts. In short, the claimed RICO conspiracy has no more substance than the purported RICO enterprise.

Respectfully submitted,

R. Bruce Rich

cc: Robert Weigel, Esq. (counsel for Plaintiffs)